UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ROGELIO YOUNG,

                Plaintiff,

                v.

TODD L. TRYON, et al.,

                Defendants.

_____

<u>REPORT & RECOMMENDATION</u>
and <u>DECISION & ORDER</u>

12-CV-6251CJS

        Rogelio Young ("Young"), proceeding *pro se*, has initiated this action against

defendants Todd L. Tryon, Michael Finnigan, Matthew Buck, Kurt Lasly, Sean McMahan, Marc

Smith, Edith Pickens ("Pickens") and Metro-Barbosa Group in their individual and official

capacities.  (Docket # 1).  Ryan has asserted violations of the Fifth, Eighth and Fourteenth

Amendments pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971)

("*Bivens*"), and the Privacy Act, 5 U.S.C. § 522a.  (*Id.*).

        Currently pending before the Court is the adequacy of Young's response to an

Order to Show Cause why this case should not be dismissed for failure to prosecute pursuant to

Rule 41(b) of the Local Rules of Civil Procedure for the United States District Court for the

Western District of New York.  (Docket ## 24, 26).  Also pending is a motion by Pickens to

dismiss Young's complaint[1] (Docket # 13) and a motion by Young to compel defendants to

respond to discovery requests (Docket # 16).

_____

[1] Tryon, Finnigan, Buck, Lasly, McMahan and Smith (the "federal defendants") also have moved to
dismiss the complaint.  (Docket # 21).  That motion will be addressed in a separate Report and Recommendation.

By Order of the Hon. Charles J. Siragusa, United States District Judge, dated July 24, 2012, all pretrial matters in the above-captioned case were referred to this Court pursuant to 28 U.S.C. §§ 636(b)(1)(A)-(B) and all dispositive motions were referred to this Court for report and recommendation pursuant to 28 U.S.C. §§ 636(b)(1)(B)-(C).  (Docket # 17).  For the reasons set forth below, I recommend that the district court grant in part and deny in part Pickens's motion to dismiss the complaint.  In addition, for the reasons set forth below, Young's motion to compel is denied.

## I.  Order to Show Cause

An Order to Show Cause was issued on October 22, 2012, following Young's failure to appear for oral argument on Pickens's motion to dismiss and Young's motion to compel.  (Docket ## 24, 25).  The oral argument date had been set in scheduling orders issued by this Court.  (Docket ## 18, 19).  The Order to Show Cause and the earlier scheduling orders were mailed to Young's address of record, 1694 Madison Avenue, Apartment 12E, New York, New York 10029.  Young responded to the Order to Show Cause on November 26, 2012, explaining that he had not received the Court's motion scheduling orders and was thus unaware that he was required to attend.  (Docket # 26).

Defendants counter that Young has failed to provide a plausible explanation for failing to appear for oral argument because the scheduling orders were mailed to an address that plaintiff has used consistently during the course of this litigation.  (Docket # 27).  Indeed, as defendants pointed out, the return address on plaintiff's response to the Order to Show Cause was the same Madison Avenue address.  (*Id.*).

2

Rule 41(b) of the Federal Rules of Civil Procedure authorizes the dismissal of an action for failure to prosecute, providing in relevant part:

> If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it.  Unless the dismissal order states otherwise, a dismissal under this subdivision . . . operates as an adjudication on the merits.

Fed. R. Civ. P. 41(b).  Although the rule refers to dismissal upon motion of a defendant, the Supreme Court has made clear that a court has the inherent authority to dismiss an action *sua sponte*.  *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962) ("[t]he authority of a court to dismiss sua sponte for lack of prosecution has generally been considered an 'inherent power,' governed not by rule or statue but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases"); *see also Minnette v. Time Warner*, 997 F.2d 1023, 1027 (2d Cir. 1993); *Taub v. Hale*, 355 F.2d 201, 202 (2d Cir.) (per curiam), *cert. denied*, 384 U.S. 1007 (1966).  In addition, the Court's Local Rules provide that "[i]f a civil case has been pending for more than six months and is not in compliance with the directives of the . . . Magistrate Judge, . . . the Court shall issue a written order to the parties to show cause within thirty days why the case should not be dismissed for failure to comply with the Court's directives or to prosecute."  W.D.N.Y. Local Rule 41(b).

Dismissal is warranted under Rule 41(b) where the record demonstrates a lack of due diligence by a plaintiff in the prosecution of his lawsuit.  *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 43 (2d Cir. 1982).  Moreover, "prejudice resulting from unreasonable delay may be presumed as a matter of law."  *Peart v. City of New York*, 992 F.2d 458, 462 (2d Cir. 1993); *Charles Labs, Inc. v. Banner*, 79 F.R.D. 55, 57 (S.D.N.Y. 1978) ("[t]he operative condition on a

3

Rule 41(b) motion is lack of due diligence on the part of the plaintiff, 'not a showing by

defendant that it would be prejudiced'") (quoting *Messenger v. United States*, 231 F.2d 328, 331

(2d Cir. 1956)).  Dismissal is considered "a harsh remedy to be utilized only in extreme

situations."  *See Minnette v. Time Warner*, 997 F.2d at 1027 (internal quotations omitted).

Applying these standards, courts have found that dismissal of a complaint is justified when the

plaintiff fails to take any specific or concrete actions over a substantial length of time.  *See, e.g.*,

*Fischer v. Dover Steamship Co.*, 218 F.2d 682, 683 (2d Cir. 1955) (plaintiff's failure to appear

for deposition noticed seven months earlier, despite court order requiring his appearance,

justified dismissal for failure to prosecute); *Myvett v. Rosato*, 2004 WL 1354254, *2 (S.D.N.Y.

2004) ("[t]hat nearly a year has elapsed since [plaintiff] took any steps to prosecute this case,

such as responding to outstanding discovery requests, strongly counsels in favor of dismissal");

*West v. City of New York*, 130 F.R.D. 522, 525-26 (S.D.N.Y. 1990) (plaintiff's inactivity for

nineteen months warranted dismissal for failure to prosecute) (citing *Chira v. Lockheed Aircraft

Corp.*, 634 F.2d 664 (2d Cir. 1980) and other cases).

        In the case at bar, two separate orders (one for Pickens's motion and one for

Young's motion) scheduling the oral argument for the date on which Young failed to appear in

court were mailed to Young at his Madison Avenue address.  In response to the Order to Show

Cause, Young represents that he did not receive the orders and indicates that he wishes to pursue

this litigation.  (Docket # 26).  On this record, I find that Young's actions do not demonstrate the

level of prosecutive delinquency justifying dismissal.  Plaintiff's case will therefore be permitted

to proceed.

Young is cautioned that any future incidents of prosecutive delinquency or non-compliance with court-ordered deadlines or other obligations may result in sanctions, including the dismissal of any or all of his claims.

## II.  Motion to Dismiss

### A.  Factual Background

Young's allegations in the complaint stem from a his detention in a federal facility.[2]  (Docket # 1).  With respect to the movant Pickens, Young identifies her in the caption as "Ms. Pickens, Medical Staff" and alleges that she violated his privacy rights because he was required to discuss his medical condition in the presence of prison guards, enabling non-medical personnel to overhear Young's discussions with the medical staff.  (Docket # 1 at ¶¶ 29-30).  Young further alleges that the guards stationed in the medical area "attempt[ed] to give diagnos[e]s when they ha[d] no medical training, and . . . later broadcast[ed] to their fellow guards the detainees' medical issues."  (*Id.* at ¶ 31).  According to Young, on one occasion, a guard interjected himself into a conversation that Young was having with a medical staff member.  (*Id.* at ¶ 30).  Young contends that these invasions of his privacy made him "very uncomfortable discussing his medical issues."  (*Id.* at ¶ 31).

Young also asserts that Pickens was deliberately indifferent to his medical needs.  (*Id.* at ¶¶ 32-34).  Young claims that he suffers from sleep apnea, which requires him to use a

---

[2]  Young does not provide the name of the facility, the length of time of his detention or the reason for the detention, although the parties apparently agree that he was being detained in connection with a civil immigration matter.   According to the federal defendants, Young was detained in the Buffalo Federal Detention Facility in Batavia, New York.  (Docket # 21-1).

breathing machine while he is sleeping. (*Id.* at ¶ 32). Young contends that the breathing

machine needed "servicing" and he told "Defendant Magee"[3] that if the machine was not

serviced, "he would have difficulty breathing." (*Id.*). According to Young, Pickens told him that

the machine would not be serviced because of budget problems, and when he asked Pickens

"why they called the department health services if they are not treating the patients," Pickens

simply smiled and ignored him. (*Id.* at ¶ 33). Young's complaint alleges that Pickens "is

indifferent, she does not take the time to listen and, if she does listen, she would always have

wise and smart comments." (*Id.* at ¶ 34).

Pickens seeks dismissal of Young's claims against her. (Docket # 13). According

to Pickens, Young lacks standing to assert a claim under the Privacy Act because he is not a

United States citizen or a lawfully-admitted alien. (Docket # 14 at 3-4). Pickens has not

provided an affidavit or other proper basis from which Young's citizenship status may be

ascertained, however; thus, the Court cannot assess the standing challenge. In addition, Pickens

contends that Young has failed to allege facts sufficient to state a Privacy Act claim against

Pickens. (*Id.* at 4-5).

Pickens likewise contends that Young has failed to allege sufficient facts to state a

deliberate indifference claim against her. (*Id.* at 6-7). According to Pickens, Young's complaint

fails to allege that his breathing machine was not repaired or that Pickens was herself involved in

any refusal to make the requested repairs. (*Id.* at 7). Pickens also contends that the claim is not

properly stated because it is devoid of any allegation that the servicing failure presented an

---

[3] The complaint does not name "Magee" as a defendant, nor does the docket reflect that anyone named Magee has been served with a copy of the summons and complaint.

"excessive risk to [Young's] health or safety."  (*Id.*).  Finally, Pickens maintains that Young has

failed to allege that he suffered any injury as a result of Pickens's actions.  (*Id.*).

     Young has not filed any opposition to Pickens's motion despite having been

afforded two opportunities to do so.  (*See* Docket ## 18, 28).

### B. <u>Discussion</u>

     "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the

legal sufficiency of the party's claim for relief."  *Zucco v. Auto Zone, Inc.*, 800 F. Supp. 2d 473,

475 (W.D.N.Y. 2011).  "To survive a motion to dismiss, a complaint must plead 'enough facts to

state a claim to relief that is plausible on its face.'"  *Ruotolo v. City of New York*, 514 F.3d 184,

188 (2d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Turkmen v.

Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)).

     The plausibility standard applies to claims brought by *pro se* litigants.  *Zucco v.

Auto Zone, Inc.*, 800 F. Supp. 2d at 475.  "At the same time, . . . a 'document filed *pro se* is to be

liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less

stringent standards than formal pleadings drafted by lawyers.'"  *Id.* at 476 (quoting *Boykin v.

KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008)).  "A court must make reasonable allowances so that

a *pro se* plaintiff does not forfeit rights due to her lack of legal training."  *Forbes v. State Univ. of

New York at Stony Brook*, 259 F. Supp. 2d 227, 232 (E.D.N.Y. 2003).  Thus, a court must

construe *pro se* pleadings liberally and "interpret them 'to raise the strongest arguments that they

suggest.'"  *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*,

14 F.3d 787, 790 (2d Cir. 1994)).  "Nevertheless, all pleadings, *pro se* or otherwise, must contain enough factual allegations to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  *Zucco*, 800 F. Supp. 2d at 476 (omission in original) (quoting *Boykin v. KeyCorp*, 521 F.3d at 214).

### 1.  Violation of Privacy

"The [Privacy] Act gives agencies detailed instructions for managing their records and provides for various sorts of civil relief to individuals aggrieved by failures on the Government's part to comply with the requirements."  *Doe v. Chao*, 540 U.S. 614, 618 (2004). With respect to disclosure of information, the Privacy Act provides:

> No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains.

5 U.S.C. § 552a(b).[4]  The Privacy Act further provides that "'[w]henever any agency' fails to comply with any provision of the statute, 'the individual may bring a civil action against the agency.'"  *See Biton v. Cuomo*, 2009 WL 3052650, *2 (E.D.N.Y. 2009) (quoting 5 U.S.C. § 552a(g)(1)(D)).

To prevail on a claim for wrongful disclosure under the Privacy Act, a plaintiff must establish the following:

> (1) the information is covered by the Act as a "record" contained in a "system of records"; (2) the agency "disclosed" the information; (3) the disclosure had an "adverse effect" on the plaintiff (an element which separates itself into two components: (a) an adverse

---

[4]  Various statutory exceptions exist to the prohibition on disclosure, none of which are at issue on this motion.  *See* 5 U.S.C. §§ 552a(b)(1)-(12).

> effect standing requirement and (b) a causal nexus between the
> disclosure and the adverse effect); and (4) the disclosure was
> "willful or intentional."

*Id.* (quoting *Quinn v. Stone*, 978 F.2d 126, 131 (3d Cir. 1992)).  The Privacy Act permits

recovery for "actual damages" (5 U.S.C. § 552a(g)(4)(A)), which, as the Supreme Court recently

clarified, refers to "pecuniary or economic harm."  *F.A.A. v. Cooper*, 132 S. Ct. 1441, 1452-53

(2012).  Thus, to properly state a claim for a violation of the Privacy Act, a plaintiff must allege

some pecuniary harm.  *See Earle v. Holder*, 2012 WL 1450574, *3 (D.C. Cir. 2012) (affirming

dismissal of Privacy Act claim where "nothing in [plaintiff's] pleadings could be construed as

alleging he sustained pecuniary loss as a result of [defendant's] alleged Privacy Act violation");

*Iqbal v. F.B.I.*, 2012 WL 2366634, *6 (M.D. Fla. 2012) (dismissing Privacy Act claim where

plaintiff alleged emotional harm, but failed to allege pecuniary harm).

> Young's claims against Pickens must be dismissed because the Privacy Act does

not provide for a cause of action against individuals.  "[T]he private right of civil action created

by the Privacy Act is specifically limited to actions against agencies of the United States

government."  *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per

curiam) (citing *Pennyfeather v. Tessler*, 431 F.3d 54, 56 (2d Cir. 2005)) ("[t]he Privacy Act

defines "agency" by referencing 5 U.S.C. § 552(f) of the Freedom of Information Act, 5 U.S.C.

§ 552a(a)(1)").[5]  The term agency includes "any executive department, military department,

Government corporation, Government controlled corporation, or other establishment in the

executive branch of the Government . . . or any independent regulatory agency."  5 U.S.C.

---

[5]  The Second Circuit has noted that the Privacy Act incorrectly references 5 U.S.C. § 552(e) instead of (f).
*Id.* at 124 n.2; *see also* 5 U.S.C. § 552a(a)(1) ("the term 'agency' means agency as defined in section 552(e) of this
title").

§ 552(f)(1).  Accordingly, Young's claim against Pickens must be dismissed.[6]  *See, e.g., Flores ex rel. Estate of Flores v. Fox*, 394 F. App'x 170, 172 (5th Cir. 2010) ("[t]he district court properly dismissed [plaintiff's] claims for damages against the individual defendants because only agencies may be sued under the Privacy Act"), *cert. denied*, 131 S. Ct. 1797 (2011); *Bavido v. Apfel*, 215 F.3d 743, 747 (7th Cir. 2000) ("[a]t the outset, we note that [the individual defendant in his official capacity] is not a proper party defendant in this Privacy Act action"); *Ramirez v. Dep't of Justice*, 594 F. Supp. 2d 58, 61-62 (D.D.C. 2009) (dismissing claims against individual federal employees because the term agency as used in the Privacy Act "does not encompass officers or employees of an agency"); *Santini v. Taylor*, 555 F. Supp. 2d 181, 183-84 (D.D.C. 2008) (federal courts lack "jurisdiction to hear FOIA claims against individuals, even where such individuals are agency heads or other agency officials named in their official capacity"); *Mandel v. U.S. Office of Pers. Mgmt.*, 244 F. Supp. 2d 146, 153 (E.D.N.Y.) (dismissing Privacy Act claims against federal employees because "[i]t is well-established that under the Privacy Act, a plaintiff may file a suit against an agency, and not an individual"), *aff'd*, 79 F. App'x 479 (2d Cir. 2003); *Germosen v. Cox*, 1999 WL 1021559, *9 (S.D.N.Y. 1999) ("[c]laims against individual federal officials [under the Privacy Act] must be dismissed"); *Parola v. I.R.S.*, 1999 WL 1215557, *7 (E.D.N.Y. 1999) (dismissing Privacy Act claims against individual federal employees because Privacy Act only authorizes claims against federal

---

[6]  Young has sued Pickens in both her individual and her official capacities.  (Docket # 1 at 11, ¶ 8).  Neither the complaint, nor Pickens's motion to dismiss, specifies her position.  In their motion to dismiss, the federal defendants have suggested that Pickens "is a contract employee with United States Public Health Service."  (Docket # 21-1 at 2 n.3).  As this factual allegation is not before the Court on this motion, this Court will construe Young's identification of Pickens as a member of the medical staff of the facility in which he was detained when he filed the lawsuit – the Buffalo Federal Detention Facility – as an allegation that Pickens is a federal employee.  If she were not a federal employee, Young could not pursue a *Bivens* action against her.  *See Minneci v. Pollard*, 132 S. Ct. 617, 626 (2012).

agencies); *Eison v. Kallstrom*, 75 F. Supp. 2d 113, 115-16 (S.D.N.Y. 1999) (dismissing Freedom

of Information Act claims against federal employees because the statute only authorizes claims

against federal agencies); *Williams v. McCausland*, 791 F. Supp. 992, 1000 (S.D.N.Y. 1992)

(dismissing Privacy Act claims against individual defendants because the Act "authorizes suits

only against 'agencies' and not individuals").

   Even if the statute could be read to permit a claim to be stated against an

individual under the Privacy Act, Young's allegations do not include "enough facts to state a

claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. at 570.  First,

his allegations concerning the purported disclosure are too vague to permit the Court to

determine what, if any, information he alleges was disclosed by Pickens and whether such

information may constitute a "record" within the meaning of the Privacy Act. *See Harris v.*

*Holder*, 885 F. Supp. 2d 390, 400-01 (D.D.C. 2012) (plaintiff failed to state a claim where

allegations were so vague that the court could not determine whether the information alleged to

be disclosed constituted a "record" or whether the information was "maintained in systems of

records" as required for claim under the Privacy Act).

   Moreover, Young has alleged no facts to suggest that Pickens herself disclosed

any of Young's medical information, much less that she did so in an "intentional or willful

manner," as required to state a statutory claim. *Doe v. Chao*, 540 U.S. at 624 ("subsequent

provision [of Privacy Act] requires proof of intent or wilfulness").  Rather, Young has alleged in

general terms that non-medical personnel were present in the medical area, overheard detainees'

discussions with medical staff and disclosed to others information that they overheard.  As to

Young in particular, his complaint alleges only that a non-medical employee interrupted one of

11

Young's conversations with the medical staff to insist that Young "didn't need such treatment and medication."  (Docket # 1 at ¶ 30).  The complaint nowhere suggests that Pickens was involved in that incident.

Further, the complaint lacks facts from which to infer that any purported disclosure was willful or intentional.  Without any factual allegations to suggest that Pickens acted willfully or intentionally, Young has failed to state a claim under the Privacy Act.  *See Flowers v. Exec. Office of the President*, 142 F. Supp. 2d 38, 47 n.14 (D.D.C. 2001) (plaintiff "fails to allege a single fact in her Complaint to suggest that [defendant's] conduct – whatever it was and whenever it occurred – was intentional or willful").

Finally, Young's claim fails to allege that he suffered any actual damages from the purported disclosure.  *See Earle v. Holder*, 2012 WL 1450574 at *1 (Privacy Act claim properly dismissed where "nothing in [plaintiff's] pleadings could be construed as alleging he sustained pecuniary loss as a result of [defendant's] alleged Privacy Act violation"); *Iqbal v. F.B.I.*, 2012 WL 2366634 at *6 (allegations of emotional injury are insufficient to state Privacy Act claim because plaintiff must allege pecuniary harm).  At most, Young's complaint alleges that the disclosure of his medical information caused him to be "very uncomfortable discussing his medical issues."  (Docket # 1 at ¶ 31).  Such allegations fail to state a claim under the Privacy Act.  *See F.A.A. v. Cooper*, 132 S. Ct. at 1453 (Privacy Act does not authorize mental or emotional distress damages).

To the extent that Young asserts a *Bivens* claim against Pickens for a violation of his constitutional right to privacy, that claim must also be dismissed.[7]  As an initial matter, the Privacy Act precludes a *Bivens* action for damages.  *See Chung v. U.S. Dep't of Justice*, 333 F.3d 273, 274 (D.C. Cir. 2003) (affirming dismissal of constitutional claims for violation of privacy rights because "they are encompassed within the remedial scheme of the Privacy Act"); *Khalfani v. Sec'y, Dep't of Veterans Affairs*, 1999 WL 138247, *6-7 (E.D.N.Y. 1999) (*Bivens* claims for disclosure of information precluded by Privacy Act); *Sullivan v. U.S. Postal Serv.*, 944 F. Supp. 191, 195 (W.D.N.Y. 1996) (Privacy Act precluded *Bivens* action against federal official for disclosure of information); *Williams v. Dep't of Veterans Affairs*, 879 F. Supp. 578, 588 (E.D. Va. 1995) (plaintiff may not maintain *Bivens* action for disclosure of medical information because "the Privacy Act provides the exclusive remedies for [such] grievances").  Moreover, Young's complaint contains no allegation suggesting that Pickens was personally involved in disclosing Young's medical information.[8]  *See Thomas v. Ashcroft*, 470 F.3d 491, 496 (2d Cir. 2006) ("in *Bivens* actions, a plaintiff must allege that the individual defendant was personally involved in the constitutional violation"); *Sash v. United States*, 674 F. Supp. 2d 531, 542 (S.D.N.Y. 2009) ("[s]imilar to a suit brought under 42 U.S.C. § 1983, a *Bivens* action lies against a defendant only when the plaintiff can show the defendant's personal involvement in the constitutional violation") (citing *Ashcroft v. Iqbal*, 556 U.S. at 675).

---

[7]  Suits against federal employees in their official capacity are the equivalent of suits against the United States and thus are barred by the doctrine of sovereign immunity.  *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994).  Accordingly, any *Bivens* claim against Pickens in her official capacity is dismissed for lack of jurisdiction.  *See id.*

[8]  It is unclear whether Young's medical condition "enjoy[s] a constitutionally-protected right to privacy." *See Matson v. Bd. of Educ. of City Sch. Dist. of New York*, 631 F.3d 57, 69 (2d Cir. 2011) (constitutional right to privacy does not extend to all medical conditions).

## 2. __Deliberate Indifference__

Young has asserted a *Bivens* claim against Pickens alleging that the failure to service his breathing machine violated his constitutional rights.[9]  A federal detainee's right to adequate medical care arises under the Due Process Clause of the Fifth Amendment, although a claim for denial of medical treatment under the Fifth Amendment is analyzed under the same deliberate indifference test as a claim arising under the Eighth Amendment.  *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000) (Eighth Amendment deliberate indifference test applies to a *Bivens* Fifth Amendment action).

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'"  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'"  *Smith v. Carpenter*, 316 F.3d 178, 183 (2d Cir. 2003) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).  This standard contains both a subjective and an objective component.  *Id*.

The objective component asks "whether there has been a sufficiently serious deprivation of the prisoner's constitutional rights."  *Sowell v. Chappius*, 695 F. Supp. 2d 16, 20 (W.D.N.Y. 2010); *Smith v. Carpenter*, 316 F.3d at 184 ("a prisoner must first make [a] threshold showing of serious illness or injury").  "A medical need is 'serious' for constitutional purposes if it presents 'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'"  *Sowell v. Chappius*, 695 F. Supp. 2d at 20 (quoting *Chance v. Armstrong*, 143 F.3d at 702).  The

---

[9]  As with Young's claims against Pickens in her official capacity for a violation of his constitutional privacy rights, any *Bivens* claim for deliberate indifference asserted against Pickens in her official capacity should be dismissed for lack of jurisdiction.  *Robinson v. Overseas Military Sales Corp.*, 21 F.3d at 510.

objective inquiry is highly fact-specific, but factors to consider include "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment'; (2) whether the medical condition significantly affects daily activities; and (3) 'the existence of chronic and substantial pain.'"  *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003) (quoting *Chance*, 143 F.3d at 702).

To analyze whether an alleged deprivation is objectively serious enough to support a prisoner's Eighth Amendment claim for a "temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." *Smith*, 316 F.3d at 185 (emphasis deleted).  Thus, "it [is] the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for Eighth Amendment purposes." *Id.* at 186 (citing *Chance*, 143 F.3d at 702-03).

I find that Young has sufficiently pleaded a serious medical need under the objective component.  Here, Young has alleged that he has sleep apnea and that he was provided a breathing machine during his detention.  Sleep apnea may be a life-threatening disorder.  *See Ross v. Westchester Cnty. Jail*, 2012 WL 86467, *5 (S.D.N.Y. 2012) ("[s]leep apnea may be a life-threatening disorder"; plaintiff "alleges that it causes him to stop breathing while he sleeps"); *West v. Scott*, 2010 WL 1258060, *10 (D. Colo. 2010) (allegation that plaintiff had been provided a sleep apnea machine "is sufficient to allege that [plaintiff's] sleep apnea condition was, at least at that point in time, considered by a medical provider to be sufficiently serious to warrant treatment, and thus, satisfie[d] [plaintiff's] obligation to plead the existence of a serious

medical need"); *Alfred v. Winn Corr. Ctr.*, 2009 WL 2307486, *4 (W.D. La. 2009) ("[s]leep

apnea is a common disorder that can be serious, [which causes] breathing [to] stop[] or get[] very

shallow[;] [e]ach pause in breathing typically lasts 10 to 20 second[s] or more") (quoting

National Library of Medicine, available at: *http://www.nlm.nih.crov/medlineplus/sleepapnea.html*).

Young has alleged that his breathing machine "need[ed] servicing" and, without

it, "he would have difficulty breathing."  (Docket # 1 at ¶ 32).  Young has further alleged that his

request for servicing was denied because of "budget problems."  (*Id.* at ¶ 33).  Drawing all

reasonable inferences from these allegations in Young's favor, I find that he has sufficiently

stated an objectively serious medical condition.  *See Ross v. Westchester Cnty. Jail*, 2012 WL

86467 at *5 (plaintiff sufficiently stated claim for deliberate indifference to serious medical need

based upon allegations that plaintiff suffered from sleep apnea and that defendant delayed in

providing breathing machine and then failed to adjust properly the machine); *West v. Scott*, 2010

WL 1258060 at *10 (plaintiff sufficiently stated claim for deliberate indifference claim based

upon allegations that defendant "took away" sleep apnea machine that he had been provided);

*Pankey v. Enders*, 2008 WL 714100, *4 (W.D. Wa. 2008) (plaintiff sufficiently stated claim for

deliberate indifference based upon allegations that he had been diagnosed with sleep apnea and

had been provided with breathing machine, but machine was not permitted in segregation,

causing him to "los[e] sleep and suffer[] discomfort and fear").  *But see Warman v. Marberry*,

2008 WL 2745170, *6 (E.D. Mich. 2008) ("[a]lthough delay in repairing the breathing machine

perhaps could cause serious consequences in some individuals, there is no suggestion that the

plaintiff is one of them[;] [i]t is more likely that he falls within the majority of sleep apnea

sufferers whose sleep interruption becomes a discomfort and an inconvenience").

As to the subjective component, "[a]n official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety." *Smith*, 316 F.3d at 184 (internal quotation omitted).  The defendant "must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Davidson v. Harris,* 960 F. Supp. 644, 647 (W.D.N.Y. 1997) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  This standard is not one of negligence, but of recklessness as used in criminal law.  *Smith*, 316 F.3d at 184.  As the Supreme Court has stated, the plaintiff must allege conduct that is "repugnant to the conscience of mankind."  *Estelle v. Gamble*, 429 U.S. at 106.

Although Young has not specifically alleged that he informed Pickens that he would have trouble breathing if his machine were not serviced, her knowledge may reasonably be inferred from his allegations.  Young alleges that Pickens told him that his machine would not be serviced due to "budget problems."  Construed in favor of Young, this allegation suggests that Young informed Pickens, or that she was otherwise aware of his contention, that his machine needed repair or servicing.  Further, the fact that Young had been allowed the use of the machine, coupled with the fact that Pickens was a member of the "medical staff," gives rise to a reasonable inference that Pickens was aware of the health risks posed by an improperly functioning machine.  *See West*, 2010 WL 1258060 at *10 (defendant's "medical training and awareness of [plaintiff's] existing prescription for a machine" permits inference that defendant possessed subjective belief that refusing to provide plaintiff with breathing machine might result in harm to plaintiff's health).  Crediting the facts alleged in the complaint, I find that Young has adequately alleged a culpable state of mind in order to state a deliberate indifference claim against Pickens.

17

Pickens's argument that Young's claim must be dismissed because he has not alleged an injury is equally unavailing.  (Docket # 14 at 7) ("[p]laintiff here has not even alleged that he suffered *any* injury as a result of [d]efendant Pickens' actions; that alone merits dismissal of the action").  If Young can establish that the failure to repair his breathing machine presented a substantial risk to his health and that Pickens deliberately ignored that risk, Young may establish a violation of his constitutional rights.  Even in the absence an actual injury entitling Young to recover compensatory damages, he still would be entitled to nominal damages.  *Cummings v. Connell*, 402 F.3d 936, 942 (9th Cir. 2005) ("[n]ominal damages, however, serve a separate function [from compensatory damages;] . . . [they] are awarded to vindicate rights, the infringement of which has not caused actual, provable injury").  Thus, I conclude that Young has sufficiently stated a claim even in the absence of an allegation of actual injury.  *See*, *e.g.*, *Gilliam v. Hamula*, 2011 WL 6148943, *16 (W.D.N.Y. 2011) (plaintiff's claim that had nurse examined him, he would have been sent to the hospital earlier was sufficient to survive summary judgment because "[e]ven if the damages are speculative, [p]laintiff would be entitled to ask the jury for nominal damages"); *Mastroianni v. Reilly*, 602 F. Supp. 2d 425, 440-41 (E.D.N.Y. 2009) ("[t]he plaintiff is not required to establish an actual physical injury . . . [;] [i]f inadequate medical care created a serious risk of harm and rose to a violation of the plaintiff's civil rights, he is entitled to recover nominal damages even if the plaintiff sustained no injury"); *Sims v. Bowen*, 1998 WL 146409, *6 (N.D.N.Y. 1998) ("even absent proof of compensable injury, a section 1983 plaintiff is entitled to nominal damages upon establishing a violation of a substantive constitutional right").

## III. __Motion to Compel__

Also pending before the Court is Young's motion to compel responses to his discovery demands.  (Docket # 16).  Defendants have opposed the motion.  (Docket ## 20, 22).  Pickens opposes the motion on the grounds that she was never served with the discovery demands.  (Docket # 20 at ¶ 10).  A review of the demands attached to Young's motion suggests that the demands were served only on the United States Attorney's Office.  (Docket # 16 at 5).  Accordingly, to the extent that Young's motion seeks to compel discovery responses from Pickens, that motion is denied.

The federal defendants oppose the motion to compel on the grounds that Young was released from custody after the commencement of this action, and Federal Rule of Civil Procedure 26(d)(1) thus precludes the parties from initiating discovery until after a Rule 26(f) conference.  (Docket # 22 at 2).  In addition, the federal defendants assert that they should not have to respond to discovery demands while Young's motion to dismiss is pending.  (*Id.* at 3).

Young's release from custody after the filing of the complaint does not necessarily override the Rule 26 exemption for cases brought by incarcerated individuals.[10]  *See Martin v. Brosseau*, 2008 WL 746970, *1 (D. Vt. 2008) ("[t]he fact that [plaintiff] was released from prison three years into this litigation does not impact [the Rule 26] exemption").  Further, the filing of a motion to dismiss does not automatically excuse a moving defendant from the necessity of responding to proper discovery requests, although a court may stay discovery for

---

[10]  Rule 26(d)(1) provides that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B)" which exempts, among others, actions commenced by a *pro se* individual who is incarcerated.  Fed. R. Civ. P. 26(a)(1)(B)(iv) and 26(d)(1).

"good cause." *Chesney v. Valley Stream Union Free Sch. Dist. No. 24*, 236 F.R.D. 113, 115 (E.D.N.Y. 2006).  In this case, considering Young's history of failing to appear for oral argument and to respond to pending motions, I find good cause to stay the federal defendants' responses until their pending motion to dismiss is determined.

**CONCLUSION**

For the reasons stated above, Young's motion to compel **(Docket # 16)** is **DENIED**.  For the reasons stated above, I recommend that the district court grant in part and deny in part Pickens's motion to dismiss **(Docket # 13)**.

**IT IS SO ORDERED.**

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
March __27__, 2013

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b), 6(a) and 6(d) and Local Rule 72(b).

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance.  *See e.g. Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**  *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72(b), or with the similar provisions of Rule 72(a) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

**IT IS SO ORDERED.**

_____*s/Marian W. Payson*_____
            MARIAN W. PAYSON
            United States Magistrate Judge

Dated: Rochester, New York
            March ___27___, 2013