UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
———————————————————————————

ROGELIO YOUNG,

                Plaintiff,

      v.

TODD L. TRYON, et al.,

               Defendants.

———————————————————————————

<u>REPORT & RECOMMENDATION</u>

12-CV-6251CJS

## <u>PRELIMINARY STATEMENT</u>

Rogelio Young ("Young"), proceeding *pro se*, has initiated this action against defendants Todd L. Tryon ("Tryon"), Michael Finnigan ("Finnigan"), Matthew J. Buck ("Buck"), Kurt Lasly ("Lasly"), Sean McMahan ("McMahan"), Marc Smith ("Smith"), Edith Pickens ("Pickens"), and Metro-Barbosa Group in their individual and official capacities.[1] (Docket # 1). Young has asserted violations of the Fifth, Eighth, and Fourteenth Amendments pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) ("*Bivens*"), and the Privacy Act, 5 U.S.C. § 552a. (*Id.*).

By Order of the Hon. Charles J. Siragusa, United States District Judge, dated July 24, 2012, all pretrial matters in the above-captioned case were referred to this Court pursuant to 28 U.S.C. §§ 636(b)(1)(A)-(B), and all dispositive motions were referred to this Court for report and recommendation pursuant to 28 U.S.C. §§ 636(b)(1)(B)-(C). (Docket # 17). Currently

---

[1] The government's motion papers refer both to "Finnegan" and "Finnigan," and "McMahon" and "McMahan." (Docket ## 21-1 at 1, 3, 15; 21-2 at ¶ 6). For the purposes of this motion, the Court will use "Finnigan" and "McMahan" – the spellings used in the complaint.

pending before the Court are motions by Tryon, Finnigan, Buck, Lasly, McMahan, and Smith (the "federal defendants") to dismiss Young's complaint.[2]  (Docket # 21).  Also pending before the Court is Valley Metro-Barbosa Group's ("VMBG") motion to dismiss the complaint. (Docket # 41).  For the reasons set forth below, I recommend that the district court grant both motions.

## FACTUAL BACKGROUND

### A.   Allegations in the Complaint

Young's allegations in the complaint stem from his detention in a federal facility.[3] (Docket # 1).  Young asserts various claims relating to the conditions of his confinement, his access to the courts, the availability of the grievance process, the adequacy of his medical treatment, and his right to privacy in both his medical and legal affairs.  (*Id.*).

Young alleges various claims arising out of the conditions of his confinement at the Batavia facility.  First, Young complains that the temperature at the detention facility was impermissibly cold.  (*Id.* at ¶¶ 1-7).  Specifically, Young asserts that between the end of November 2011 through sometime in March 2012, the temperatures in his cell were "very, very cold."  (*Id.* at ¶¶ 2-3, 5).  According to Young, Tryon, Lasly and VMBG failed to provide adequate heat or clothing to detainees during those months.  (*Id.* at ¶ 1).  Young contends that despite sleeping with two blankets, two sheets, his issued clothing, and a jacket, he was still cold.

---

[2]  Pickens also moved to dismiss the complaint.  (Docket # 13).  That motion was addressed in a separate Report and Recommendation.  (Docket # 30).

[3]  Although Young's complaint does not provide the name of the facility, the length of time of his detention or the reason for the detention, the parties apparently agree that he was detained at the Buffalo Federal Detention Facility in Batavia, New York (the "Batavia facility") in connection with a civil immigration matter.  (Docket ## 21-1 at 1; 41-1 at 2 n.2; 45 at ¶ 2).

(*Id.* at ¶ 3).  In addition, Young alleges that despite his repeated complaints to "unit guards, lieutenants, and ICE officials," his concerns regarding the lack of heat were ignored.  (*Id.* at ¶¶ 5-7).  Young maintains that the lack of proper heating and exposure to the cold caused him "extreme physical discomfort and pain."  (*Id.* at ¶ 20).

Second, Young contends that Tryon and VMBG used the regular housing unit where he was detained as a "Special Housing Unit" to lodge physically and mentally ill detainees together with healthy detainees.  (*Id.* at ¶¶ 8, 11, 13; Sec. XIII at ¶ 2).  Young asserts that healthy detainees "[take] advantage" of ill detainees and that his complaints to staff members were ignored.  (*Id.* at ¶¶ 8, 10, 11, 13).  Young further alleges that the guards' imposition of "24-hour lock downs" temporarily deprived inmates of access to the telephone, shower, legal materials, and coffee.  (*Id.* at ¶ 9).  According to Young, he complained to the "[d]efendants," but his requests to terminate the use of the unit as a special housing unit were ignored.  (*Id.* at ¶ 13).

Third, Young claims that the housing unit was too loud and that the "constant and excessive high volume noise from early morning to late at night," in combination with his medical issues, interfered with his sleep.  (*Id.* at ¶¶ 14-15, 20).  According to Young, despite complaints from him and other detainees to "the unit guards, lieutenants, ICE staff, and anyone who would listen," Tryon, Lasly and VMBG failed to take steps to control the "zoo-like environment," and the "constant high level noise" caused him extreme physical discomfort and pain.  (*Id.* at ¶¶ 14-17 & n.2, 20; Sec. XIII ¶ 3).

Fourth, according to Young, Tryon, Smith and VMBG permitted a list of purportedly *pro bono* attorneys to be displayed at the facility.  (*Id.* at ¶¶ 43-47).  According to Young, he contacted each lawyer on the list, and none of the attorneys agreed to take his case *pro bono*.  (*Id.*).

Finally, Young contends that the meals provided to detainees were unsanitary because the detainees who served the meals put their hands inside their pants and then touched the food. (*Id.* at ¶ 28). Young claims that his complaints to unidentified guards, lieutenants, and officials were ignored. (*Id.*). Young further alleges that Tryon, Lasly and VMBG are responsible for ensuring that the food was served under sanitary conditions. (*Id.* at Sec. XIII ¶ 5).

In addition to the claims concerning the conditions of his confinement, Young contends that Tryon, Lasly, Finnigan, Buck and VMBG interfered with his access to the courts and his ability to utilize the grievance process. Specifically, Young contends that Tryon, Finnigan, Buck and VMBG denied him access to "rules, policies, procedures, and standards for any departments" and that the law library materials did not contain "federal law, Shepard's, or any materials necessitate [sic] the assisting of conducting research to access the courts." (*Id.* at ¶¶ 18-19; Sec. XIII ¶ 4). In addition, Young asserts that Tryon, Lasly and VMBG permitted a policy of recording inmates' legal phone calls placed to attorneys and to the courts. (*Id.* at ¶¶ 40-42; Sec. XIII ¶¶ 9, 11). Finally, Young alleges that Tryon and Lasly "knowingly and intentionally" obstructed the detainee grievance process. (*Id.* at ¶¶ 21-27). According to Young, despite his repeated requests for grievance forms, he was issued only one grievance form. (*Id.* at ¶ 23).

Young also asserts that his rights to privacy were violated during his detention. First, Young asserts that Tryon, Lasly, McMahon and VMBG violated his privacy rights because he was required to discuss his medical conditions in the presence of prison guards, enabling non-medical personnel to overhear Young's discussions with medical staff. (*Id.* at ¶¶ 29-30). Young further contends that the guards stationed in the medical area "attempt[ed] to give

4

diagnos[e]s when they ha[d] no medical training, and . . . later broadcast[ed] to their fellow guards the detainees' medical issues." (*Id.* at ¶ 31).  According to Young, on one occasion, a guard interjected himself into a conversation that Young was having with a medical staff member.  (*Id.* at ¶ 30).  Young contends that these invasions of his privacy made him "very uncomfortable discussing his medical issues."  (*Id.* at ¶ 31).

Second, Young contends that Smith violated his rights under the Privacy Act by "openly discuss[ing] his [immigration] case and that of other detainees directly at the unit officers' desk in plain hearing of other detainees in the unit."  (*Id.* at ¶ 36).  According to Young, other inmates "as far as [twenty] feet away" could overhear details concerning Young's immigration case.  (*Id.* at ¶ 37).  Young alleges that Smith denied his request for a private meeting to discuss his case.  (*Id.*at ¶ 38).

Finally, construing the complaint broadly, it alleges that Tryon and McMahan were deliberately indifferent to his medical needs.[4]  (*Id.* at ¶ 35).  Young claims that he suffers from sleep apnea, which requires him to use a breathing machine while he is sleeping.  (*Id.* at ¶ 32).  Young contends that his breathing machine needed "servicing" and that he told "Defendant Magee"[5] that if the machine were not serviced, "he would have difficulty breathing." (*Id.*).  According to Young, the written requests that he sent McMahan to speak with him were

---

[4]  The first paragraph of this claim identifies several defendants, including Tryon, Lasly, McMahan and VMBG. (Docket # 1 at ¶ 29).  This paragraph contains allegations relating solely to alleged privacy violations, while subsequent paragraphs of the claim pertain to alleged inadequate medical treatment.  (*Id.* at ¶¶ 32-35).  Young does not identify any specific conduct or omission attributable to Lasly or VMBG concerning the adequacy of Young's medical treatment.  Accordingly, I do not construe Young's complaint to assert a claim for inadequate medical treatment against either Lasly or VMBG.

[5]  The complaint does not name "Magee" as a defendant, nor does the docket reflect that anyone named Magee has been served with a copy of the summons and complaint.

ignored.  (*Id.* at ¶ 35).  Young also asserts that his requests to Tryon "about the medical department" were ignored.  (*Id.*).

Young has also attached to his complaint various documents entitled "Detainee Request to Facility Employee," which appear to represent Young's attempts to file grievances concerning the allegations in his complaint.  (Docket # 1 at 13-21, 24-29).  Facility officials apparently responded to some of the requests.  (*Id.* at 16, 17, 18, 19, 20, 21, 22-23, 29).  However, with the exception of Buck who evidently reviewed one request (*id.* at 21), none of the individuals who responded to the requests appear to be named as defendants in this action.

### B.   **Federal Defendants' Motion**

The federal defendants seek dismissal of Young's claims against them.  (Docket # 21-1).  First, the federal defendants contend that they are entitled to dismissal of all claims asserted against them in their official capacity on the grounds that the court lacks jurisdiction over such claims.  (*Id.* at 8, 20).  Second, McMahan contends that he is entitled to dismissal of all claims asserted against him on the grounds that he is immune from suit under 42 U.S.C. § 233(a).  (*Id.* at 7-8, 15).

With respect to Young's conditions of confinement claims, the federal defendants contend that the claims should be dismissed because none of the conditions alleged by Young presented a substantial risk of serious harm.  (*Id.* at 9-11).  In addition, Tryon and Lasly contend that Young has failed to adequately allege that they acted with deliberate indifference.  (*Id.* at 11-12).

The federal defendants also contend that Young's access to the courts claims should be dismissed in their entirety.  First, with respect to Young's claims regarding the adequacy of the law library, the federal defendants maintain that the claims should be dismissed

because Young has failed to allege that he suffered any injury as a result of the purported deficiencies. (*Id.* at 13). In addition, the federal defendants contend that Young's claim that his phone calls with attorneys were monitored and recorded should be dismissed on the grounds that Young has failed to allege personal involvement of any of the individual defendants. (*Id.* at 18-19).

Tryon contends that Young's claim that he improperly allowed the *pro bono* list of attorneys to be displayed at the facility should be dismissed because Young has failed to allege sufficient facts to assert a claim for supervisory liability with respect to Tryon. (*Id.* at 19-20). With respect to Young's claims that Tryon, Buck and Finnigan denied him access to facility policies and procedures, the federal defendants contend the claim should be dismissed on two independent bases. First, they maintain that the complaint does not adequately allege that his access to facility policies and procedures was denied. (*Id.* at 13). In addition, the federal defendants contend that Young does not have a constitutional right to access to the facility policies and procedures. (*Id.* at 13-14).

Similarly, with respect to Young's claims against Lasly and Tryon for interference with the grievance process, they contend that the claim should be dismissed because Young does not have a constitutional right to a prison grievance procedure. (*Id.* at 20). Second, Tryon contends that the claim against him should also be dismissed because Young has failed to adequately state a claim for supervisory liability against him. (*Id.*).

The federal defendants contend that Young's claims regarding violations of his privacy should be dismissed. First, they contend that Young has failed to state a claim pursuant to the Privacy Act because he has failed to allege that the information released was "contained within a system of record." (*Id.* at 18). In addition, they contend that the claim should be

dismissed on the grounds that a Privacy Act claim may not be asserted against individual officers.  (*Id.*).  Finally, they maintain that Young lacks standing to assert a claim under the Privacy Act because he is not a United States citizen or a lawfully admitted alien, although they have not provided an affidavit or other proper basis from which Young's citizenship status may be ascertained.  (*Id.*).  Further, according to the federal defendants, to the extent Young is asserting a violation of constitutional rights, Young does not have a constitutionally protected privacy interest with respect to either his medical condition or his immigration case.  (*Id.* at 16-18).

Finally, the federal defendants assert that Young has failed to allege sufficient facts to state a deliberate indifference claim against them.  (*Id.* at 14-16).  McMahan claims that he is entitled to immunity from suit on this claim.  (*Id.*).  Tryon asserts that Young has failed to allege that he was involved in Young's medical decisions or that he was deliberately indifferent to any serious medical needs that caused Young "actual or imminent substantial harm."  (*Id.*).

Young has not filed any opposition to the federal defendants' motion.  (*See* Docket # 28).

## C.     VMBG's Motion to Dismiss

VMBG seeks dismissal of Young's complaint on the grounds that it fails to state a claim.  (Docket # 41).  According to VMBG, it is a private entity not subject to *Bivens* claims.  (Docket # 41-1 at 4-6).  In addition, VMBG contends that Young has failed to allege that it acted as an agency of the federal government.  (*Id.* at 7-8).  VBMG further contends that it is entitled to dismissal of Young's Privacy Act claim on the grounds that Young's allegations are too vague to permit the Court to determine what information was purportedly disclosed or that he sustained any actual damages.  (*Id.* at 8-10).  In addition, VMBG contends that Young has failed to allege

that he is either a United States citizen or a lawfully admitted permanent resident alien, a requirement for suit under the Privacy Act. (*Id.* at 6). Finally, VMBG asserts that it is entitled to dismissal of any constitutional privacy claim because the Privacy Act precludes such a claim. (*Id.* at 9).

Young opposes VMBG's motion on the grounds that he is a lawfully admitted permanent resident of the United States. (Docket # 45). VMBG replies that even if Young's assertion that he is a lawfully admitted permanent resident of the United State were accepted as true, Young still has not adequately pled the remaining elements of a Privacy Act cause of action. (Docket # 48).

## DISCUSSION

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the party's claim for relief." *Zucco v. Auto Zone, Inc.*, 800 F. Supp. 2d 473, 475 (W.D.N.Y. 2011). "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)).

The plausibility standard applies to claims brought by *pro se* litigants. *Zucco v. Auto Zone, Inc.*, 800 F. Supp. 2d at 475. "At the same time, . . . a 'document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* at 476 (quoting *Boykin v.*

*KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008)).  "A court must make reasonable allowances so that a *pro se* plaintiff does not forfeit rights due to [his] lack of legal training."  *Forbes v. State Univ. of New York at Stony Brook*, 259 F. Supp. 2d 227, 232 (E.D.N.Y. 2003).  Thus, a court must construe *pro se* pleadings liberally and "interpret them 'to raise the strongest arguments that they suggest.'"  *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).  "Nevertheless, all pleadings, *pro se* or otherwise, must contain enough factual allegations to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  *Zucco*, 800 F. Supp. 2d at 476 (omission in original) (quoting *Boykin v. KeyCorp*, 521 F.3d at 214).  In addition, although as a general matter a Court should not "dismiss a *pro se* complaint without granting the plaintiff leave to amend[;] . . . leave to amend is not necessary when it would be futile."  *Acosta v. Robinson*, 2012 WL 6569766, *1 (E.D.N.Y. 2012) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

### A.      Official Capacity Claims for Monetary Damages

Suits for monetary damages against federal employees in their official capacity are the equivalent of suits against the United States and are barred by the doctrine of sovereign immunity.  *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994).  Accordingly, any *Bivens* claim against the federal defendants in their official capacities for monetary damages should be dismissed for lack of jurisdiction.  *See id.*; *see also Morrow v. Dupont*, 2010 WL 1005856, *4 (E.D.N.Y. 2010); *Thomas v. Metro. Corr. Ctr.*, 2010 WL 2507041, *5 (S.D.N.Y. 2010).

### B.      Claims Against McMahan (Count VIII)

Pursuant to 42 U.S.C. § 233(a), the Federal Torts Claim Act is the exclusive remedy for any claim "resulting from the performance of medical, surgical, dental or related

functions . . . by any commissioned officer or employee of the Public Health Service while

acting within the scope of his office or employment." *See* 42 U.S.C. § 233(a).  Accordingly,

"Section 233(a) grants absolute immunity to PHS officers and employees for actions arising out

of the performance of medical or related functions within the scope of their employment by

barring all actions against them for such conduct." *Hui v. Casteneda*, 559 U.S. 799, 806, 809-10

(2010); *see Cuoco v. Moritsugu*, 222 F.3d at 107-08 (defendants entitled to absolute immunity

from suit, including *Bivens* claims for deliberate indifference); *Barnhill v. Terrell*, 2014 WL

4828801, *10 (E.D.N.Y. 2014) ("[p]laintiff makes no allegation that his interactions with [public

health worker] were in any way outside the [the worker's] employment as a public health

worker[;] [a]ccordingly, [p]laintiff's claims with respect to [the worker] are barred by the PHSA,

and are dismissed pursuant to FRCP 12(b)(1)").

The complaint identifies McMahan as an employee of the United States Public

Health Service[6] ("USPHS").  The allegations against McMahan relate to his conduct in

connection with Young's medical care.  (Docket # 1 at ¶¶ 29, 35; Section XIII at ¶ 8).

Accordingly, the claims against McMahan should be dismissed with prejudice.  *See Hui v.*

*Castaneda*, 559 U.S. at 812 (holding § 233 precludes *Bivens* claim against USPHS employee);

*Warrender v. United States*, 2011 WL 703927, *4 (E.D.N.Y. 2011) (dismissing claims against

USPHS employee because exclusive remedy is against the United States under the FTCA);

*Dowdy v. Hercules*, 2010 WL 169624, *7 (E.D.N.Y. 2010) (the "USPHS employees . . . are

---

[6] In addition, in support of the motion to dismiss, the federal defendants have submitted the affidavit of Philip Jarres, the Captain of the USPHS, who affirms that McMahan is "commissioned into the USPHS Commissioned Corps pursuant to 42 U.S.C. § 204 and . . .[was a] commissioned officer[] of the USPHS during the period September 2, 2011 to June 12, 2012."  (Docket # 21-2 at ¶ 6).

entitled to statutory immunity under § 233 and, therefore, the *Bivens* claims against them are dismissed with prejudice").

### C.   Claims for Injunctive Relief

Young's complaint seeks injunctive relief.  (Docket # 1).  Specifically, Section XIII of the complaint entitled "Relief Requested" seeks an order requiring certain defendants to make materials available in the Batavia facility law library, to ensure that the food handlers in the facility wear appropriate clothing, to appoint Young a *pro bono* attorney, and to cease monitoring legal calls made by detainees at the facility to lawyers and courts.  (Docket # 1, Section XIII at ¶¶ 4-5, 10-11).

According to the Second Circuit, "[i]t is settled . . . that a transfer from a prison facility moots an action for injunctive relief against the transferring facility."  *Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996).  Accordingly, "an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility."  *Kearney v. N.Y.S.D.O.C.S.*, 2012 WL 5931399, *2 (N.D.N.Y. 2012) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006)); *Jabarah v. Garcia*, 2010 WL 3834663, *3-4 (S.D.N.Y. 2010) (dismissing plaintiff's claims for injunctive relief against officials at a federal detention center on the grounds that they became moot upon plaintiff's transfer to a different facility).

In response to a show cause order, Young represented to the Court that he was "no longer detained at the Buffalo federal detention facility in Batavia, New York."[7]  (Docket

---

[7]  Whether an inmate has been transferred is a factual issue that generally may only be resolved by reference to material outside the four corners of the complaint.  *See, e.g.*, *Howard v. City of New York*, 2012 WL 5816976, *6 (S.D.N.Y. 2012) ("[defendant] cannot introduce [evidence of transfer] on a motion to dismiss pursuant to Rule 12(b)(6)").  Some courts have interpreted this issue as jurisdictional, permitting resolution by resort to extrinsic evidence.  *See Rosales v. Wright*, 2012 WL 87123, *1 n.1 (W.D.N.Y. 2012) ("[o]n a motion to dismiss

# 26).  Accordingly, I conclude that Young's claim for injunctive relief should be dismissed as moot.

### D.    *Bivens* Claims

The United States Supreme Court has authorized lawsuits against federal officials for the intentional deprivation of constitutional rights.  *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).  A *Bivens* action is "the nonstatutory federal counterpart of a suit brought pursuant to 42 U.S.C. § 1983" and permits a claimant to obtain damages "for injuries caused by a federal agent acting 'under color of his authority' in violation of a claimant's constitutionally protected rights."  *Shaw v. Lopez*, 2004 WL 1396698, *2 (D. Conn. 2004).

### 1.    Claims Against VMBG (Counts I-V, VII-VIII, X-XI)

Young has asserted *Bivens* claims against VMBG alleging various constitutional violations arising from his detention in the Batavia facility.  (Docket # 45 at ¶ 2).  Young asserts that VMBG failed to provide adequate environmental conditions of confinement at the Batavia facility, in violation of the Fifth Amendment (Counts I-III, V, VII, XI); failed to provide an adequate law library, and access to facility rules and procedures and confidential attorney-client telephone calls, in violation of the Fifth and First Amendments (Counts IV[8] and X), *see Adekoya v. Herron*, 2013 WL 6092507, *12 (W.D.N.Y. 2013) ("[t]he constitutional right of access to the

---

under Rule 12(b)(1), a court may consider materials outside the pleadings").  Others have allowed the plaintiff an opportunity to submit controverting evidence.  *See Howard v. City of New York*, 2012 WL 5816976 at *6-7 (converting motion to dismiss to motion for summary judgment and allowing plaintiff opportunity to explain why "judgment dismissing their claims for injunctive relief" should not be granted).  In this case, Young has represented to the Court that he is no longer detained at the Batavia facility.  Under these circumstances, the Court concludes that Young's own representations warrant dismissal of his claims for injunctive relief.

[8]  The complaint contains two claims labeled Count VI.  The first appears at paragraphs 18-19 and the second at paragraphs 21-28.  The Court will refer to the allegations contained in paragraphs 18-19 as Count IV and the allegations in paragraphs 21-28 as Count VI.

courts is protected by the First Amendment's right to petition the government for redress of

grievances . . . [and] the constitutional guarantee of due process of law"); *see also Groenow v.*

*Williams*, 2014 WL 941276, *7 (S.D.N.Y. 2014) ("[t]he Supreme Court has 'grounded' [the right

of access to the court] in a number of constitutional provisions, including the Article IV

Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment

Due Process Clause, and the Fourteenth Amendment Equal Protection and Due Process

Clauses"); and, violated his constitutional right to privacy in his medical condition (Count VIII),

in violation of the Fifth Amendment, *see Cooke v. United States Bureau of Prisons*, 926

F. Supp. 2d 720, 737 (E.D.N.C. 2013) (assuming without deciding that federal detainees possess

a limited constitutional right under the Fifth Amendment to privacy in medical treatment).

According to VMBG, the Batavia facility is operated by United States

Immigration and Customs Enforcement ("ICE").  (Docket # 41-2 at ¶ 2).  VMBG represents that

it is a private company that has contracted with ICE to provide detention officers to monitor,

transport and control the detainee population at the Batavia facility.  (*Id.*).  Given its status as a

private entity, VMBG contends that any *Bivens* claim against it for constitutional violations

arising from Young's detention at the Batavia facility must be dismissed.  (Docket # 41-1 at 4-6).

A *Bivens* claim is an implied private action for damages and has been described as

an "extraordinary" remedy that should "rarely if ever be extended to new contexts."  *El-Hanafi v.*

*United States*, 2014 WL 4199643, *3 (S.D.N.Y. 2014) (internal quotations omitted) (citing *Corr.*

*Servs. Corp. v. Malesko*, 534 U.S. 61, 69 (2001)).  In *Malesko*, the Supreme Court declined to

extend *Bivens* to confer a right of action for damages against a private company acting under

color of federal law.  *Corr. Servs. Corp. v. Malesko*, 534 U.S. at 74.  Specifically, the Court

refused to permit a federal inmate to sue a private company that had contracted with the Bureau

14

of Prisons to operate a halfway house for a *Bivens* claim arising from the conditions of his confinement and alleged inadequate medical care. *Id.* at 64. The Court reasoned that implying a private cause of action against the private company would not fulfill the underlying purpose of *Bivens* to deter "the unconstitutional acts of individual officers." *Id.* at 68. Citing its earlier decision in *FDIC v. Meyer*, 510 U.S. 471, 485 (1994), in which the Court declined to extend *Bivens* to permit suit against a federal agency as to which Congress had waived sovereign immunity, the Court noted that the purpose of *Bivens* was not to deter *agency* conduct and that "the threat of suit against an individual's employer was not the kind of deterrence contemplated by *Bivens*." *Id.* at 70. The Court also acknowledged that the plaintiff had alternative remedies, including state tort claims, a federal suit for injunctive relief and administrative remedies. (*Id.* at 73-74).

In *Minneci v. Pollard*, 132 S. Ct. 617 (2012), the Supreme Court subsequently declined to extend *Bivens* to permit "an Eighth Amendment-based damages action . . . against employees of a privately operated federal prison." 132 S. Ct. at 620. In reaching its decision, the Court recognized that the plaintiff had adequate state law remedies because the challenged conduct was "of a kind that typically falls within the scope of traditional state tort law." *Id.* at 626.

Applying *Malesko* and *Minneci*, numerous district courts have dismissed *Bivens* claims asserted against private entities, often noting that the plaintiff had alternative remedies available. *See*, *e.g.*, *El-Hanafi v. United States*, 2014 WL 4199643 at *3 (dismissing *Bivens* claim for inadequate medical treatment asserted against "private companies that had contracted with the federal government to provide services to federal inmates"); *Watson v. Zerillo*, 2014 WL 2566910, *1-2 (E.D.N.Y. 2014) (dismissing *Bivens* claims for inadequate medical treatment

against private company that owned and operated a federal detention facility where plaintiff was incarcerated); *Chen Chao v. Holder*, 2013 WL 4458998, *1, 7 (E.D.N.Y. 2013) (dismissing claims against a private corporation that had contracted with ICE to operate federal detention facility, noting that plaintiff had alternative remedies under New York law); *La Ford v. Geo Grp., Inc.*, 2013 WL 2249253, *1-2 (E.D.N.Y. 2013) (dismissing *Bivens* claims against company that privately owned and operated a federal detention center); *Pasternack v. Lab. Corp. of Am.*, 2011 WL 3478732, *14 (S.D.N.Y. 2011) (dismissing *Bivens* claim alleging violation of due process rights against a privately owned company; "[t]he Supreme Court has expressly 'foreclose[d] the extension of Bivens to private entities'") (quoting *Malesko*, 534 U.S. at 66 n.2); *Orellana v. World Courier, Inc.*, 2010 WL 3861013, *2 (E.D.N.Y. 2010) ("*Bivens* only provides a cause of action against individual federal officers, not private entities[;] [s]ince it is indisputable that [defendant] is a private entity, [p]laintiff cannot state a *Bivens* claim); *Brown v. W. Valley Envtl. Servs., LLC*, 2010 WL 5575327, *7 (W.D.N.Y. 2010) ("plaintiff . . . fails to allege a *Bivens* claim here because the defendants are private parties beyond the scope of that cause of action, . . . and he has alternative remedies available . . . such that if this federal action were dismissed he would still have avenues for redress"), *report and recommendation adopted*, 2011 WL 111696 (W.D.N.Y. 2011); *Megna v. Food & Drug Admin.*, 2009 WL 749900, *7 (E.D.N.Y. 2009) ("no *Bivens* claim exists against the . . . [private] defendants for alleged collaboration with the FDA in causing the death of a person from the use of a prescribed drug, for which numerous alternative remedies against the . . . defendants exist elsewhere, including in state court"), *aff'd*, 377 F. App'x 113 (2d Cir. 2010); *Bender v. Gen. Servs. Admin.*, 539 F. Supp. 2d 702, 708 (S.D.N.Y. 2008) ("defendants correctly point out that *Bivens* actions may not be brought against private corporations, even when they act under color of federal law[;] . . .

[a]s a private corporation operating under contract with the federal government, [defendant] is in all material respects in the same position as the defendant in *Malesko*, and it is therefore not subject to a *Bivens* action"); *Shaw v. Lopez*, 2004 WL 1396698 at *5 ("[a] private corporation operating a prison is not subject to suit under *Bivens*"); *Haughton v. Burroughs*, 2004 WL 330242, *4 (S.D.N.Y. 2004) ("it is clear that [plaintiff] cannot bring a *Bivens* action against [the defendants], both of which are private corporations").

In this case, VMBG, a private entity with which the federal government has contracted to assist in the operation of the Batavia facility, is similar in all material respects to the private entity defendant in *Malesko*. Permitting a *Bivens* action against VMBG in this case would no more fulfill the underlying purpose of *Bivens* than an action against the entity in *Malesko*. Further, New York state law provides adequate alternative remedies for Young to assert his conditions of confinement claims (Counts I-III, V, VII and XI). *See Chen Chao v. Holder*, 2013 WL 4458998 at *5 (recognizing that under New York law "a correctional facility owes a duty of care to safeguard inmates") (quotation omitted); *Smith v. United States*, 207 F. Supp. 2d 209, 214 n.3 (S.D.N.Y. 2002) ("New York law holds that the state owes a duty to use reasonable care to protect its inmates from foreseeable risks of harm") (internal quotation omitted) (collecting cases). The remaining constitutional claims asserted against VMBG (Counts IV, VII and X) allege violations of Young's rights under the First and Fifth Amendments and primarily implicate Young's rights to privacy and access to the courts. It is not clear that these claims, by contrast to the conditions of confinement claims, allege conduct "of a kind that typically falls within the scope of traditional state tort law." *Minneci v. Pollard*, 132 S. Ct. at 626; *see also Espinoza v. Zenk*, 2013 WL 1232208, *9-10 (E.D.N.Y. 2013) (recognizing *Bivens* claim asserting violations of plaintiff's Fifth and First Amendment rights against individual

17

employees of a private prison because state law did not provide adequate alternative remedies).  I

need not reach that issue, however, because Young has otherwise failed to state a claim with

respect to these causes of action, as explained below.

### 2.        Conditions of Confinement (Counts I-III, V, VII, XI)

"[A] person detained prior to conviction receives protection against mistreatment

at the hands of prison officials under the Due Process Clause of the Fifth Amendment if the

pretrial detainee is held in federal custody."  *Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir.

2009); *see also Adekoya v. Herron*, 2013 WL 6092507 at *13 ("[u]nder the Due Process Clause

of the Fifth Amendment, a detainee held in federal custody has no right to be free from

discomfort but does enjoy the right to be free from being subjected to conditions of confinement

while awaiting trial which amount to punishment") (internal quotation omitted).

In order to plead a *Bivens* claim arising out of the environmental conditions of

confinement, a plaintiff must allege that a defendant "(1) caused injury to the plaintiff through

his (2) deliberate indifference to a substantial risk that the plaintiff would be deprived of a basic

human need, such as food, clothing, shelter, medical care, sleep, and reasonable safety."

*Turkmen v. Ashcroft*, 915 F. Supp. 2d 314, 338 (E.D.N.Y. 2013) (citing *Caiozzo v. Koreman*, 581

F.3d at 63); *see also Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) ("[t]o state an Eighth

Amendment claim based on conditions of confinement, an inmate must allege that:

(1) objectively, the deprivation the inmate suffered was 'sufficiently serious that he was denied

the minimal civilized measure of life's necessities,' and (2) subjectively, the defendant official

acted with 'a sufficiently culpable state of mind . . . , such as deliberate indifference to inmate

health or safety'") (quoting *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001)).  "[A]lthough

a pretrial inmate mounting a constitutional challenge to environmental conditions *must show*

*deliberate indifference*, it may generally be presumed from an absence of reasonable care." *See*

*Adekoya*, 2013 WL 6092507 at *13 (quoting *Benjamin v. Fraser*, 343 F.3d 35, 50 (2d Cir.

2003)).

Thus, to assert a constitutional claim based upon the conditions of his

confinement, an inmate must allege conditions that "either alone or in combination, pose an

unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d at 125 (citing

*Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). "[T]here is no static test to determine whether a

deprivation is sufficiently serious; the conditions themselves must be evaluated in light of

contemporary standards of decency." *Id.* (quoting *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir.

2012)). In addition, alleged inadequacies of an inmate's confinement "may be aggregated to rise

to the level of a constitutional violation, but 'only when they have a mutually enforcing effect

that produces the deprivation of a single, identifiable human need such as food, warmth, or

exercise.'" *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)). Further, as with any

constitutional violation, in order to hold a prison official liable, the plaintiff must allege that the

official was personally involved in the violation. *See Haley v. Tryon*, 12 F. Supp. 3d 573, 575

(W.D.N.Y. 2014) ("to establish a claim under *Bivens*, a plaintiff must plausibly allege that the

individual defendant participated actively in the constitutional violation").

### a.   Seriousness of Conditions

Construing liberally the allegations in Young's complaint, I conclude that several

of Young's conditions of confinement claims must be dismissed because they fail to allege

sufficiently serious deprivations. For instance, Young claims that his housing unit was

impermissibly used as a Special Housing Unit ("SHU"). (Docket # 1 at ¶¶ 8-13) (Count II).

According to Young, the improper use of his housing unit resulted in two conditions of

constitutional significance.  First, detainees were forced to endure "24-hour lock down[s]" resulting in the temporary deprivation of use of the phone, showers, law library, and hot water for coffee.  (*Id.* at ¶¶ 8-9).  In addition, according to Young, by using the unit as a SHU, the facility improperly housed "healthy detainees with . . . physically and mentally ill detainees." (*Id.* at ¶ 8).

Young's claim concerning "24-hour lock down[s]" (Count II) fails to state a claim.  First, the complaint is unclear whether Young himself, as opposed to other inmates, has ever been subject to a 24-hour lockdown.  Even if the complaint could be read to allege that he has, the lockdowns allegedly resulted in temporary deprivation of the use of the phone, the law library or the shower.  Such temporary deprivations are not sufficiently serious.  *See Walker v. Schriro*, 2013 WL 1234930, *13 (S.D.N.Y. 2013) (allegations that plaintiff was temporarily deprived of food, shower, linens, running water or bathroom were insufficient to state a claim; "[g]iven that none of the[] deprivations rose to an acute and conscience-shocking level, either alone or in combination, the relative brevity of [p]laintiff's mistreatment precludes a finding that [p]laintiff can satisfy the requirement of an objectively serious deprivation"); *McGee v. Pallito*, 2011 WL 6291954, *13 (D. Vt.) (dismissing claim where plaintiff alleged he was deprived of running water during lockdown drill because "temporary deprivations of drinking water are not unconstitutional"), *report and recommendation adopted*, 2011 WL 6294202 (D. Vt. 2011); *Husbands v. McClellan*, 990 F. Supp. 214, 217 (W.D.N.Y. 1998) ("[t]he temporary loss of the various privileges alleged in this case – *i.e.*, telephone, package, commissary and recreation privileges – does not represent the type of deprivation which could reasonably be viewed as imposing an atypical and significant hardship on an inmate"); *Harris v. Keane*, 962 F. Supp. 397, 404-05 (S.D.N.Y. 1997) ("[p]laintiff's alleged deprivation of access to the law library was

temporary, lasting only one day[,] . . . [and] [p]laintiff has not sufficiently pled any actual injury

resulting from not having access to the law library[;] [t]herefore, [p]laintiff's claim on this issue

is dismissed"); *Ramirez v. Holmes*, 921 F. Supp. 204, 208 (S.D.N.Y. 1996) (denial of shower on

several occasions "does not constitute a sufficiently serious deprivation").

   Similarly, Young's allegation that he was impermissibly housed with "physically

and mentally ill" inmates (Count II) is insufficient to constitute a deprivation of constitutional

significance.  *See Abdur-Raheem v. Selsky*, 806 F. Supp. 2d 628, 636-37 (W.D.N.Y. 2011)

(dismissing plaintiff's claim that he was housed "near unruly mentally ill prisoners" because

such allegations failed to establish condition resulting "in the unquestioned and serious

deprivation of basic human needs") (quoting *Rhodes v. Chapman*, 452 U.S. at 347).  This is

particularly true where, as here, Young has failed to allege that being housed with physically or

mentally ill detainees had any adverse impact on Young.  *See Dzwonczyk v. Syracuse City Police

Dep't*, 710 F. Supp. 2d 248, 267 (N.D.N.Y. 2008) ("where, as here, the plaintiff does not allege

that he was assaulted or threatened by other inmates, or where plaintiff only alleges that he was

in fear of an assault, a claim for failure to protect must be dismissed"); *see Waldo v. Goord*, 1998

WL 713809, *2-3 (N.D.N.Y. 1998) (dismissing claims that overcrowding "resulted in an

increase in tension, mental anguish and frustration among prisoners" because plaintiff failed to

"assert any injury beyond the fear and tension allegedly engendered by the overcrowding").

   Further, Young's claims regarding the unsanitary nature of the food service at the

Batavia facility (Count VII) are insufficient to state a serious deprivation of a basic human need.

The Constitution "requires that prisoners receive nutritionally adequate food prepared and served

in conditions that do not present an immediate danger to the health of inmates who consume it."

*Chapdelaine v. Keller*, 1998 WL 357350, *12 (N.D.N.Y. 1998) (citing *Robles v. Coughlin*, 725

F.2d 12, 16 (2d Cir. 1983)).  Young claims that the food service at the facility was not sanitary because the detainees who served the food wore low hanging pants and would at times place their hands in their pants and then serve food.  Such allegations are insufficient because they fail to present an immediate danger to Young's health.  *Compare Robles v. Coughlin*, 725 F.2d at 16 (allegation that prison officials contaminated inmates' meals with "dust, rocks, glass and human waste" sufficient to withstand dismissal) *with Cunningham v. Metro. Gov't of Nashville & Davidson Cnty.*, 2011 WL 2680377, *4 (M.D. Tenn.) (dismissing claim that food was continuously served on "unsanitary trays" in absence of allegations that unsanitary conditions resulted in unreasonable risk of disease), *report and recommendation adopted*, 2011 WL 2670748 (M.D. Tenn. 2011); *Chapdelaine v. Keller*, 1998 WL 357350 at *12 (dismissing plaintiff's claim that he was served unwashed and contaminated food by other inmates who did not wear protective clothing in absence of showing of immediate danger to plaintiff's health) *and M.F. v. Reish*, 1996 WL 345953, *4 (S.D.N.Y. 1996) (dismissing plaintiff's claims that food prepared by other inmates could be contaminated and that utensils were unsanitary in absence of alleged facts suggesting immediate danger to health).  I likewise conclude that Young's complaints concerning the posting of a list of *pro bono* attorneys (Count XI) fails to assert a claim of constitutional significance.  Accordingly, I recommend dismissal of Young's conditions of confinement claims relating to the lockdowns, the housing in proximity to ill detainees, the food service and the posting of a *pro bono* list of attorneys at the facility.

   I reach a different conclusion with respect to Young's claims that the "very, very cold" temperatures and the "constant and excessive high volume noise" interfering with his sleep caused him to suffer "extreme physical discomfort and pain."  (Counts I, III and V).  "It is well settled that exposing prisoners to extreme temperatures without adequate ventilation may

violate" an inmate's constitutional rights. *Walker*, 717 F.3d at 126. "Courts should examine several factors in assessing claims based on low cell temperature, such as the severity of the cold; its duration; whether the prisoner has alternative means to protect himself from the cold; the adequacy of such alternatives; as well as whether he must endure other uncomfortable conditions as well as cold." *Dixon v. Godinez*, 114 F.3d 640, 644 (7th Cir. 1997). Similarly, "sleep is critical to human existence, and conditions that prevent sleep have been held to violate" the Constitution. *See Walker*, 717 F.3d at 126; *Antonelli v. Sheahan*, 81 F.3d 1422, 1433 (7th Cir. 1996) (holding inmates have a right to be protected from incessant excessive noise and extreme temperatures).

Young contends that for a period of about five months he was forced to spend approximately eighteen hours a day in a cell that was "very, very cold." Although Young does not identify the approximate temperature of his cell and concedes that he was given sheets, blankets and a jacket, he maintains that he was nonetheless unable to get warm despite the use of two blankets, two sheets, his jacket and his issued clothing. In addition, Young alleges that he was unable to sleep because of "the constant and excessive high volume noise." (Docket # 1 at ¶ 15). Drawing all reasonable inferences in favor of Young, I conclude that his allegations, taken together, are adequate to plausibly allege that the conditions of his confinement were sufficiently extreme and persistent to state a constitutional claim. *See Walker*, 717 F.3d at 128 (plaintiff's claims that for twenty-eight months he was confined in an inadequate space, with extreme temperatures, unsanitary conditions, and under noisy conditions that made it difficult to sleep adequately stated constitutional violation); *Antonelli v. Sheahan*, 81 F.3d at 1433 (allegations of excessive noise every night, cold indoor temperatures and denial of blanket sufficiently stated claim); *Eams v. Johns*, 2011 WL 2270897, *2 (E.D.N.C. 2011) (plaintiff sufficiently stated

constitutional claim based upon allegations of freezing air, twenty-four hour lights, and constant excessive noise); *Walker v. Dep't of Corr.*, 2002 WL 32341702, *11 (W.D. Wis. 2002) (plaintiff's allegations of extreme temperatures in the summer and winter and twenty-four lighting sufficiently stated claim).[9]

### b.   Personal Involvement

Young seeks to hold Tryon and Lasly liable for the temperature and noise conditions at the Batavia facility.  (Docket # 1 at ¶ 1, Section XIII at ¶¶ 1, 3).  The only allegations in the complaint concerning them that are related to the temperature and noise conditions are that they "have not provided proper clothing for winter months."  (Docket # 1 at ¶ 1).  The complaint, however, includes no factual allegations that Tryon and Lasly were aware of and disregarded the temperature and noise conditions at the facility.  Although Young repeatedly alleges that he informed various individuals, including staff members, unit guards, lieutenants, and ICE officials (Docket # 1 at ¶¶ 1, 5-7, 13), about the temperature and noise conditions, he has not identified any particular individual whom he informed.  Tryon and Lasly

---

[9]   In reaching this conclusion, I acknowledge that many conditions of confinement claims based upon temporary extreme temperatures or noise have been dismissed for failure to state a claim.  The alleged facts of those cases, however, are materially different in severity, duration or both from those asserted here.  *See, e.g., Lunsford v. Bennett*, 17 F.3d 1574, 1580 (7th Cir. 1994) (granting summary judgment to defendants where plaintiff offered no evidence that the "noise levels posed a serious risk of injury to the plaintiff"; "[s]ubjecting a prisoner to a few hours of periodic loud noises that merely annoy, rather than injure . . . does not demonstrate a disregard for the prisoner's welfare"); *Scott v. Lopez*, 2012 WL 75430, *2 (S.D.N.Y. 2012) (holding "several hours of confinement in a chilly room is not a constitutional violation" and distinguishing cases where prisoners "were subject to extreme cold for months at a time"); *King v. Henry*, 2010 WL 4386539, *7 (N.D. Fla.) (allegations of forty-eight days of temperatures ranging from thirty to sixty degrees were insufficient to state a claim where inmate had access to a winter coat), *report and recommendation adopted*, 2010 WL 4386537 (N.D. Fla. 2010); *Williams v. Grant*, 2009 WL 3317262, *4 (S.D. Ga. 2009) (allegations that plaintiff was subjected to three hours of cold temperatures insufficient to state a claim); *Mintun v. Corr. Corp. of Am.*, 2009 WL 666958, *5 (W.D. Okla. 2009) (plaintiff's allegations that noise interfered with his sleep inadequate to state claim where complaint failed to allege frequency of sleep interruption or resulting harm); *Sterling v. Smith*, 2007 WL 781274, *3 (S.D. Ga. 2007) (plaintiff's allegations that he was subjected to excessive noise caused by "banging on doors" and "loud televisions" insufficient to state claim because plaintiff did not allege "noise beyond that one would expect to be part of a typical prison environment"); *Brown v. McElroy*, 160 F. Supp. 2d 699, 706 (S.D.N.Y. 2001) (dismissing plaintiff's claim arising from the cold temperature of his room where plaintiff admitted "that he was able to get warm with some blankets").

are thus entitled to dismissal of these claims.  *See Haley v. Tryon*, 12 F. Supp. 3d at 576

(plaintiff's allegations that he sent complaint to defendant insufficient to plausibly allege

personal involvement); *Whitenack v. Armor Med.*, 2013 WL 2356110, *6-7 (E.D.N.Y. 2013)

(dismissing conditions of confinement claim where plaintiff failed to allege that his health was in

immediate danger or "that any defendant knew that the diet provided was inadequate or likely to

inflict harm upon the plaintiff").

        Further, to the extent Young seeks to hold Tryon and Lasly liable as supervisors

at the facility, such claims must be dismissed because "in order to be subject to liability under

*Bivens*, a federal official must have been personally involved in the alleged constitutional

violation; simply being in a supervisory position is not sufficient." *Ramos v. Winiewicz*, 2012

WL 1044530, *5 (W.D.N.Y. 2012); *Adekoya*, 2013 WL 6092507 at *4 ("[t]o state a valid *Bivens*

claim, the plaintiff must specifically allege that each defendant was personally involved in the

purportedly unconstitutional conduct[;] . . . [b]ecause personal involvement is a prerequisite to

liability under *Bivens*, federal officials who are not personally involved in an alleged

constitutional deprivation may not be held vicariously liable for the acts of subordinates").  As

stated above, at best, Young has asserted that Tryon and Lasly failed to provide proper winter

clothing.  (Docket # 1 at ¶ 1).  Such allegations, without more, are insufficient to constitute

personal involvement on the part of Tryon and Lasly.[10]  *See Haley*, 12 F. Supp. 3d at 576;

*Adekoya*, 2013 WL 6092507 at *4.

---

[10]  According to the Second Circuit, a supervisory defendant may be shown to have been personally involved in a constitutional violation through evidence that:

    (1) the defendant participated directly in the alleged constitutional violation,
    (2) the defendant, after being informed of the violation through a report or
    appeal, failed to remedy the wrong, (3) the defendant created a policy or custom
    under which unconstitutional practices occurred, or allowed the continuance of

## 2.   Access to Facility Rules, Adequacy of the Law Library and Recording of Attorney Phone Calls (Counts IV and X)

Young has asserted various constitutional violations relating to his access to legal materials, facility rules and confidential phone conversations with his attorney.  (Docket # 1 at ¶¶ 18-19, 40-42).  After a careful review of these allegations, I conclude that they fail to state a claim because Young has not alleged any concrete injury.

Although some courts have held that "the failure to provide notice of prison rules [governing inmate conduct] to inmates is a violation of due process," *Robles v. Coughlin*, 725 F.2d at 16 (collecting cases), Young has failed to allege that he has suffered any injury of constitutional dimension due to the failure of the defendants to provide him with a copy of the facility rules.  *See Oakes v. Green*, 2008 WL 559683, *5 (E.D. Ky. 2008).  For instance, nothing in the complaint suggests that Young faced disciplinary or other adverse consequences as a result of his lack of notice of facility rules and policies.[11]  In the absence of such allegations, I conclude

---

such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).  I note that district courts in this Circuit are divided on whether and to what extent the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. at 676, may have eroded *Colon* by limiting the ways in which personal involvement may be established, and the Second Circuit has not resolved the matter.  *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013); *see also Raspardo v. Carlone*, 770 F.3d 97, 117 (2d Cir. 2014) ("[w]e have not yet determined the contours of the supervisory liability test . . . after *Iqbal*").  I need not resolve this issue because I conclude that even under the more expansive *Colon* factors, Tryon and Lasly are entitled to dismissal of the claims.

[11] It is not clear from the complaint whether Young received a copy of the facility handbook.  Although Young asserts that he was unable to obtain access to departmental rules, policies, procedures and standards, Young attached to his complaint a letter dated April 26, 2012 from Supervisory Detention and Deportation Officer Diana Miller-Jones that informed Young that all detainees were provided with a copy of the facility handbook.  (Docket # 1 at Exhibit ("Ex.") 10).  In addition, one of the grievance requests attached to the complaint suggests that Young had access to the facility handbook.  (*Id.* at Ex. 6).  Further, in their motion papers, the federal defendants assert that "each BFDF detainee receives a copy of a detainee handbook which contains relevant facility policies and procedures, and that Plaintiff signed a BFDF Intake Form on September 2, 2011, indicating that he had received this handbook."  (Docket # 21-1).  Despite this conflicting information, the Court will construe the allegations in the complaint in a light most favorable to Young and assume for the purposes of this motion that Young was not provided access to the facility rules and procedures.

that Young has failed to state a claim.  *Oakes v. Green*, 2008 WL 559683 at *5 ("[a]bsent some

showing that the failure to provide notice of prison rules and regulations causes some injury, as

where an inmate is found in violation of a prison regulation because he was not given prior

notice that such conduct was prohibited, there is no reason to conclude the inmate's

constitutional rights have been violated").

        Similarly, although an inmate has a constitutional right of access to the courts,

"which includes a reasonable opportunity to seek and receive the assistance of attorneys," *Schick*

*v. Apker*, 2009 WL 2016933, *8 (S.D.N.Y.), *report and recommendation adopted*, 2009 WL

2016926 (S.D.N.Y. 2009), such rights are limited to "defense against criminal charges,

challenges to the inmate's conviction through direct appeal, applications for habeas corpus relief,

and civil rights claims."  *Id.*  In addition, "in order to violate an inmate's right of access to the

courts, a defendant's conduct must cause the inmate 'actual injury,' in that a legal action that he

sought to pursue must have been 'materially prejudiced' by the defendant's actions."[12]  *Id.*

(quoting *Smith v. O'Connor*, 901 F. Supp. 644, 649 (S.D.N.Y. 1995)); *see also Groenow*, 2014

WL 941276 at *7 ("a plaintiff must show that a deprivation of his right to access the courts

unfairly prejudiced his case").  Young has not identified the nature of the legal matter for which

he sought to speak to his attorney, much less that he suffered any adverse material consequences

as a result of the defendants' alleged monitoring or recording of the phone calls.  Indeed, the

complaint does not clearly allege whether Young himself (as opposed to detainees in general)

actually participated in telephone calls with his attorney that were monitored or recorded.  In

---

[12]  A right of access to the courts claim asserted under the Sixth Amendment does not require an allegation of actual injury.  *See Groenow v. Williams*, 2014 WL 941276 at *6.  I do not interpret Young's complaint to assert a Sixth Amendment violation as nothing in the complaint suggests that Young was subject to criminal proceedings during his period of detention.  In any event, Young has failed to assert that he had no alternate means of communication with counsel.  *See id.* at *6-7.

addition, although Young seeks to hold Tryon and Lasly liable for the alleged constitutional

violation (Docket # 1 at Section XIII at ¶ 11), he has failed to allege any personal involvement

on the part of either defendant.  Accordingly, I conclude that Young has failed to adequately

allege any constitutional violation arising from the defendants' alleged monitoring and recording

of Young's legal calls.  *See Groenow*, 2014 WL 941276 at *7 (dismissing plaintiff's claim

arising out of the alleged monitoring of his phone calls with his attorney where plaintiff failed to

allege any injury); *Haraszewski v. Brannan*, 2011 WL 4570557, *4 (S.D. Ca. 2011) (dismissing

denial of access claim where "[p]laintiff fails to allege facts that [d]efendants' actions

specifically caused [p]laintiff's attorney to end communications with him or that [d]efendants'

actions caused an actual injury and hindered [p]laintiff from pursuing his legal claim in court");

*Schick v. Apker*, 2009 WL 2016933 at *9-10.

        Likewise, Young's allegation that Tryon, Finnigan and Buck failed to provide an

adequate law library should be dismissed for failure to state a claim.  "[T]he fundamental

constitutional right of access to the courts requires prison authorities to assist inmates in the

preparation and filing of meaningful legal papers by providing prisoners with adequate law

libraries or adequate assistance from persons trained in the law."  *Bounds v. Smith*, 430 U.S. 817,

828 (1977).  "Because *Bounds* did not create an abstract, freestanding right to a law library or

legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his

prison's library or legal assistance program is subpar in some theoretical sense."  *Lewis v. Casey*,

518 U.S. 343, 351 (1996).  Rather, "[t]o establish a *Bounds* violation, [plaintiff] must

demonstrate that the alleged shortcomings in the library or legal assistance program hindered his

efforts to pursue a legal claim."  *Jones v. Armstrong*, 367 F. App'x 256, 258 (2d Cir.), *cert.*

*denied*, 560 U.S. 949 (2010).  Although Young claims that the law library does not have any

"federal law, Shepards, or any materials necessitate [sic] the assisting of conducting research to access the courts" (Docket # 1 at ¶ 19), he has failed to allege any actual injury to him resulting from the purported inadequacy of the law library.  In addition, Young has failed to allege that Tryon, Finnigan, or Buck were personally involved in impeding his access to legal materials.  Thus, Young's claim regarding the adequacy of the law library should be dismissed.  *See Thompson v. United States*, 2010 WL 1910293 at *4 (W.D.N.Y. 2010) (dismissing claim where inmate simply claimed that the library was inadequate and failed to allege in any way that he was not "furnish[ed] . . . with the capability of bringing his challenges before the courts") (internal quotation omitted); *Graham v. Perez*, 121 F. Supp. 2d 317, 324 (S.D.N.Y. 2000) (dismissing claim where inmate had access to legal materials and legal personnel and where inmate "failed to allege that any particular defendant prevented his access to legal materials, or that any of his legal claims were prejudiced due to his limited access to legal materials").

### 3.      Obstruction of Grievance Process

Young's claim that Tryon and Lasly "knowingly and intentionally" obstructed the grievance process should also be dismissed for failure to state a claim.  "[T]he law is clear that [inmates] ha[ve] no constitutional right to have [their] grievances processed at all, or if processed, to have the procedure done properly."  *Hughes v. Nemier*, 2014 WL 1322872, *2 (W.D.N.Y. 2014) (collecting cases); *Rivera v. Lempke*, 810 F. Supp. 2d 572, 576 (W.D.N.Y. 2011) ("inmates have no freestanding right to any particular grievance procedures"); *Abney v. Jopp*, 655 F. Supp. 2d 231, 234 (W.D.N.Y. 2009) ("courts in this circuit have held that there is no constitutional right of access to prison grievance procedures, apart from the right to access the courts"); *Rhodes v. Hoy*, 2007 WL 1343649, *6 (N.D.N.Y. 2007) ("there is no constitutional right of access to the established inmate grievance program").  Accordingly, a prison official's

refusal to process an inmate's grievance does not give rise to a claim under *Bivens*.  *See Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 380 (S.D.N.Y. 2011) (dismissing plaintiff's *Bivens* claim that his grievances were not addressed "because prisoners do not have a due process right to a thorough investigation of grievances") (quotation omitted) (collecting cases).  Thus, Young's claim that Tryon and Lasly violated his right of access to the courts by interfering with the grievance process lacks merit and should be dismissed.

### 4.    **Deliberate Indifference**

Young has asserted a *Bivens* claim against Tryon[13] alleging that the failure to service his breathing machine violated his constitutional rights.  A federal detainee's right to adequate medical care arises under the Due Process Clause of the Fifth Amendment, although a claim for denial of medical treatment under the Fifth Amendment is analyzed under the same deliberate indifference test as a claim arising under the Eighth Amendment.  *Cuoco*, 222 F.3d at 106 (Eighth Amendment deliberate indifference test applies to a *Bivens* Fifth Amendment action); *Caiozzo*, 581 F.3d at 70-71.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'"  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'"  *Smith v. Carpenter*, 316 F.3d 178, 183 (2d Cir. 2003) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).  This standard contains both a subjective and an objective component.  *Id.*

---

[13]  As discussed above, although the Court interprets Young's complaint as attempting to assert a deliberate indifference claim against McMahan, I concluded that McMahan is immune from suit on that claim.

The objective component asks "whether there has been a sufficiently serious deprivation of the prisoner's constitutional rights." *Sowell v. Chappius*, 695 F. Supp. 2d 16, 20 (W.D.N.Y. 2010); *Smith v. Carpenter*, 316 F.3d at 184 ("a prisoner must first make [a] threshold showing of serious illness or injury"). "A medical need is 'serious' for constitutional purposes if it presents 'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'" *Sowell v. Chappius*, 695 F. Supp. 2d at 20 (quoting *Chance v. Armstrong*, 143 F.3d at 702). The objective inquiry is highly fact-specific, but factors to consider include "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment'; (2) whether the medical condition significantly affects daily activities; and (3) the existence of chronic and substantial pain.'" *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003) (quoting *Chance*, 143 F.3d at 702).

To analyze whether an alleged deprivation is objectively serious enough to support a prisoner's Eighth Amendment claim for a "temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." *Smith*, 316 F.3d at 185 (emphasis deleted). Thus, "it [is] the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for Eighth Amendment purposes." *Id.* at 186 (citing *Chance*, 143 F.3d at 702-03).

As to the subjective component, "[a]n official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety." *Smith*, 316 F.3d at 184 (internal quotation omitted). The defendant "must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm

31

exists, and he must also draw the inference." *Davidson v. Harris,* 960 F. Supp. 644, 647

(W.D.N.Y. 1997) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). This standard is not

one of negligence, but of recklessness as used in criminal law. *Smith*, 316 F.3d at 184. As the

Supreme Court has stated, the plaintiff must allege conduct that is "repugnant to the conscience

of mankind." *Estelle v. Gamble*, 429 U.S. at 106.

I find that Young has failed to allege sufficient facts to state a deliberate

indifference claim against Tryon. Although Young contends that his requests to Tryon "about

the medical department" were ignored, he has failed to allege that he informed Tryon that his

sleep apnea machine needed servicing. Accordingly, Young's claim should be dismissed.

## E.   Privacy Act

Young's claim that Tryon, Lasly, Smith and VMBG violated his privacy rights

should also be dismissed for failure to state a claim. "The [Privacy] Act gives agencies detailed

instructions for managing their records and provides for various sorts of civil relief to individuals

aggrieved by failures on the Government's part to comply with the requirements." *Doe v. Chao*,

540 U.S. 614, 618 (2004). With respect to disclosure of information, the Privacy Act provides:

> No agency shall disclose any record which is contained in a system
> of records by any means of communication to any person, or to
> another agency, except pursuant to a written request by, or with the
> prior written consent of, the individual to whom the record
> pertains.

5 U.S.C. § 552a(b).[14] The Privacy Act further provides that "'[w]henever any agency' fails to

comply with any provision of the statute, 'the individual may bring a civil action against the

---

[14]   The Privacy Act was recently amended, but those amendments are irrelevant to the issues raised by this case. *See* Tax Increase Prevention Act of 2014, Pub. L. No. 113-295, 128 Stat. 4010 (codified as amended in Titles 5, 11 and 26 of the United States Code). In addition, various statutory exceptions exist to the prohibition on disclosure, none of which are at issue on this motion. *See* 5 U.S.C. §§ 552a(b)(1)-(12).

agency.'"  *See Biton v. Cuomo*, 2009 WL 3052650, *2 (E.D.N.Y. 2009) (quoting 5 U.S.C.

§ 552a(g)(1)(D)).

To prevail on a claim for wrongful disclosure under the Privacy Act, a plaintiff

must establish the following:

> (1) the information is covered by the Act as a "record" contained in
> a "system of records"; (2) the agency "disclosed" the information;
> (3) the disclosure had an "adverse effect" on the plaintiff (an
> element which separates itself into two components: (a) an adverse
> effect standing requirement and (b) a causal nexus between the
> disclosure and the adverse effect); and (4) the disclosure was
> "willful or intentional."

*Id.* (quoting *Quinn v. Stone*, 978 F.2d 126, 131 (3d Cir. 1992)).  The Privacy Act permits

recovery for "actual damages" (5 U.S.C. § 552a(g)(4)(A)), which refers to "pecuniary or

economic harm."  *F.A.A. v. Cooper*, 132 S. Ct. 1441, 1452-53 (2012).  Thus, to properly state a

claim for a violation of the Privacy Act, a plaintiff must allege some pecuniary harm.  *See Earle*

*v. Holder*, 2012 WL 1450574, *3 (D.C. Cir. 2012) (affirming dismissal of Privacy Act claim

where "nothing in [plaintiff's] pleadings could be construed as alleging he sustained pecuniary

loss as a result of [defendant's] alleged Privacy Act violation"); *Iqbal v. F.B.I.*, 2012 WL

2366634, *6 (M.D. Fla. 2012) (dismissing Privacy Act claim where plaintiff alleged emotional

harm, but failed to allege pecuniary harm).

Young's claims against Tryon, Smith and Lasly should be dismissed because the

Privacy Act does not provide for a cause of action against individuals.  "[T]he private right of

civil action created by the Privacy Act is specifically limited to actions against agencies of the

United States government."  *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir.

2008) (per curiam) (citing *Pennyfeather v. Tessler*, 431 F.3d 54, 56 (2d Cir. 2005)) ("[t]he

Privacy Act defines "agency" by referencing 5 U.S.C. § 552(f) of the Freedom of Information

Act, 5 U.S.C. § 552a(a)(1)").[15]  The term agency includes "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government . . . or any independent regulatory agency."  5 U.S.C. § 552(f)(1).  Accordingly, Young's claims against Tryon, Smith and Lasly[16] must be dismissed. *See*, *e.g.*, *Flores ex rel. Estate of Flores v. Fox*, 394 F. App'x 170, 172 (5th Cir. 2010) ("[t]he district court properly dismissed [plaintiff's] claims for damages against the individual defendants because only agencies may be sued under the Privacy Act"), *cert. denied*, 131 S. Ct. 1797 (2011); *Bavido v. Apfel*, 215 F.3d 743, 747 (7th Cir. 2000) ("[a]t the outset, we note that [the individual defendant in his official capacity] is not a proper party defendant in this Privacy Act action"); *Ramirez v. Dep't of Justice*, 594 F. Supp. 2d 58, 61-62 (D.D.C. 2009) (dismissing claims against individual federal employees because the term agency as used in the Privacy Act "does not encompass officers or employees of an agency"); *Mandel v. U.S. Office of Pers. Mgmt.*, 244 F. Supp. 2d 146, 153 (E.D.N.Y.) (dismissing Privacy Act claims against federal employees because "[i]t is well-established that under the Privacy Act, a plaintiff may file a suit against an agency, and not an individual"), *aff'd*, 79 F. App'x 479 (2d Cir. 2003); *Germosen v. Cox*, 1999 WL 1021559, *9 (S.D.N.Y. 1999) ("[c]laims against individual federal officials [under the Privacy Act] must be dismissed"); *Parola v. I.R.S.*, 1999 WL 1215557, *7 (E.D.N.Y. 1999) (dismissing Privacy Act claims against individual federal employees because Privacy Act only authorizes claims against federal agencies); *Williams v. McCausland*, 791 F. Supp. 992,

---

[15]  The Second Circuit has noted that the Privacy Act incorrectly references 5 U.S.C. § 552(e) instead of (f). *Id.* at 124 n.2.  *See also* 5 U.S.C. § 552a(a)(1) ("the term 'agency' means agency as defined in section 552(e) of this title").

[16]  Although it is far from clear that VMBG constitutes an agency of the United States within the meaning of the Privacy Act, *see Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d at 124, I need not reach that question because I conclude, for the reasons discussed below, that Young's allegations are otherwise insufficient to state a claim under the Privacy Act.

1000 (S.D.N.Y. 1992) (dismissing Privacy Act claims against individual defendants because the Act "authorizes suits only against 'agencies' and not individuals").

Even if the statute could be read to permit a claim to be stated against the individual defendants or VMBG under the Privacy Act, Young's allegations do not include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. at 570.  First, his allegations concerning the purported disclosure are too vague to permit the Court to determine what, if any, information he alleges was disclosed by Tryon, Lasly, Smith and VMBG and whether such information may constitute a "record" within the meaning of the Privacy Act.  *See Harris v. Holder*, 885 F. Supp. 2d 390, 400-01 (D.D.C. 2012) (plaintiff failed to state a claim where allegations were so vague that the court could not determine whether the information alleged to be disclosed constituted a "record" or whether the information was "maintained in systems of records" as required for claim under the Privacy Act).

Moreover, Young has alleged no facts to suggest that Tryon, Lasly or VMBG disclosed any of Young's medical or other information, much less that any of them did so in an "intentional or willful manner," as required to state a statutory claim.  *Doe v. Chao*, 540 U.S. at 624 ("subsequent provision [of Privacy Act] requires proof of intent or willfulness").  Rather, Young has alleged in general terms that non-medical personnel were present in the medical area, overheard detainees' discussions with medical staff and disclosed to others information that they overheard.  As to Young in particular, his complaint alleges only that a non-medical employee interrupted one of Young's conversations with the medical staff to insist that Young "didn't need such treatment and medication."  (Docket # 1 at ¶ 30).  The complaint nowhere suggests that Tryon, Lasly or VMBG officials or employees were involved in that incident.  Further, the complaint lacks facts from which to infer that any purported disclosure was willful or intentional.

Without any factual allegations to suggest that Tryon, Lasly or VMBG acted willfully or intentionally, Young has failed to state a claim under the Privacy Act. *See Flowers v. Exec. Office of the President*, 142 F. Supp. 2d 38, 47 n.14 (D.D.C. 2001) (plaintiff "fails to allege a single fact in her Complaint to suggest that [defendant's] conduct – whatever it was and whenever it occurred – was intentional or willful").

      With respect to Young's immigration case, Young has alleged that Smith refused to speak privately with Young concerning the details of his case and that, as a result, other detainees became aware of Young's "case." (*Id.* at ¶¶ 38-39). He has not specifically alleged that Smith disclosed any information about his case contained in a record protected by the Privacy Act.

      Moreover, Young's Privacy Act claim fails to allege that he suffered any actual damages from the purported disclosures. *See Earle v. Holder*, 2012 WL 1450574 at *1 (Privacy Act claim properly dismissed where "nothing in [plaintiff's] pleadings could be construed as alleging he sustained pecuniary loss as a result of [defendant's] alleged Privacy Act violation"); *Iqbal v. F.B.I.*, 2012 WL 2366634 at *6 (allegations of emotional injury are insufficient to state Privacy Act claim because plaintiff must allege pecuniary harm). At most, Young's complaint alleges that the disclosure of his medical information caused him to be "very uncomfortable discussing his medical issues." (Docket # 1 at ¶ 31). Similarly, with respect to his immigration case, Young has failed to allege any adverse consequences as a result of Smith's refusal to discuss the case privately. (*Id.* at ¶¶ 36-39). Such allegations fail to state a claim under the Privacy Act. *See F.A.A. v. Cooper*, 132 S. Ct. at 1453 (Privacy Act does not authorize mental or emotional distress damages).

To the extent that Young asserts a *Bivens* claim against Tryon, Lasly, Smith and VMBG for a violation of his constitutional right to privacy, that claim should also be dismissed. As an initial matter, the Privacy Act precludes a *Bivens* action for damages.  *See Chung v. U.S. Dep't of Justice*, 333 F.3d 273, 274 (D.C. Cir. 2003) (affirming dismissal of constitutional claims for violation of privacy rights because "they are encompassed within the remedial scheme of the Privacy Act"); *Khalfani v. Sec'y, Dep't of Veterans Affairs*, 1999 WL 138247, *6-7 (E.D.N.Y. 1999) (*Bivens* claims for disclosure of information precluded by Privacy Act); *Sullivan v. U.S. Postal Serv.*, 944 F. Supp. 191, 195 (W.D.N.Y. 1996) (Privacy Act precluded *Bivens* action against federal official for disclosure of information); *Williams v. Dep't of Veterans Affairs*, 879 F. Supp. 578, 588 (E.D. Va. 1995) (plaintiff may not maintain *Bivens* action for disclosure of medical information because "the Privacy Act provides the exclusive remedies for [such] grievances").  Moreover, as stated previously, Young's complaint contains no allegation suggesting that Tryon or Lasly were personally involved in disclosing Young's medical information.  *See Thomas v. Ashcroft*, 470 F.3d 491, 496 (2d Cir. 2006) ("in *Bivens* actions, a plaintiff must allege that the individual defendant was personally involved in the constitutional violation"); *Sash v. United States*, 674 F. Supp. 2d 531, 542 (S.D.N.Y. 2009) ("[s]imilar to a suit brought under 42 U.S.C. § 1983, a *Bivens* action lies against a defendant only when the plaintiff can show the defendant's personal involvement in the constitutional violation") (citing *Iqbal*, 556 U.S. at 675).  Although Young asserts that he made requests to Tryon "about the medical department" (Docket # 1 at ¶ 35), that allegation alone is insufficient to allege personal involvement on the part of Tryon.  Finally, given the vagueness of the allegations in the complaint, the Court is unable to determine what information, if any, was improperly disclosed and whether such information is of a nature to give rise to a constitutional privacy right.  *See*

*Myers v. Dolac*, 2013 WL 5175588, *7 (W.D.N.Y. 2013) (whether an inmate has a constitutionally protected privacy interest depends upon the nature of the information and must be determined on a case-by-case basis).

### F.      Leave to Amend

For the reasons discussed above, I recommend that the district court dismiss all of the claims contained in the complaint against the federal defendants and VMBG.  Considering Young's *pro se* status, I recommend that the district court afford him leave to attempt to cure the deficiencies identified herein, with the exception of (1) the official capacity claims seeking monetary damages; (2) the claim for injunctive relief; (3) the claims asserted against McMahan; and, (4) any *Bivens* claims arising out of the conditions of confinement asserted against VMBG – as repleading those claims would be futile.

If Young wishes to amend, he should incorporate into an amended complaint all of the claims he wishes to assert and all of the allegations he wishes to include in support of those claims.  Young should be cautioned that only the allegations contained in that proposed complaint will be considered.  Young should clearly identify each of the defendants against whom he wishes to assert claims and include factual allegations describing the conduct on which the claims against each defendant is based.  The allegations in the amended complaint must be clear and concise and provide each defendant with sufficient notice to understand and respond to the claims against him or her.

If the district court affords Young leave to replead and Young does not do so, the operative complaint will be Young's original complaint against defendant Pickens.  (Docket # 1).

## <u>CONCLUSION</u>

For the reasons stated above, I recommend that the district court grant the defendants' motions to dismiss (**Docket ## 21, 41**).

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
January 23, 2015

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

      **ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

      **ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b), 6(a) and 6(d) and Local Rule 72(b).

      The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See e.g. Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

      **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

      The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72(b), or with the similar provisions of Rule 72(a) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

      Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

**IT IS SO ORDERED.**

                                   *s/Marian W. Payson*
                                    MARIAN W. PAYSON
                             United States Magistrate Judge

Dated: Rochester, New York
       January 23, 2015